## RATHMELL WILSON

*vs.*

## THE BALTIMORE & PHILADELPHIA RAILROAD COMPANY.

New Castle, March T. 1884.

*Eminent domain; constitutional provisions as to exercise of right of; compensation for property taken; notice to land-owner and opportunity for a hearing.*

1. The only limitation upon the exercise of the right of eminent domain—the power of the State to take or authorize the taking of private property for public use—is that contained in the State Constitution.

2. The Federal Constitution imposes no restraint upon the States in that respect; the Fifth Amendment does not apply to the States, and the Fourteenth Amendment does not apply to the exercise of the right of eminent domain.

3. The only limitation prescribed by the Delaware Constitution upon the taking of private property for public use, against the owner's will, is that compensation shall be made therefor (article 1, § 8); and the provisions of §§ 7 and 9 of article 1, in relation to "the law of the land" and "the due course of law," do not apply thereto.

4. An Act of the Legislature, providing for the taking of private property for a railroad and for the assessment of damages by commissioners, need not, under the Delaware Constitution, provide for notice to the owner of the time and place of the meeting of the commissioners to make the assessment, nor need it secure to the owner a hearing in relation to the assessment of damages; and such Act will not be rendered unconstitutional or void by reason of the omission of such provisions therefrom.

5. *It seems* that it is not essential to the validity of an assessment of damages for private property, taken under the right of eminent domain, that a hearing, or notice thereof, should be given to the owner, when there is no constitutional or statutory provision requiring it.

6. Since an Act providing for the taking of private property for public use is not unconstitutional because it omits to secure the owner a hearing in reference to the assessment of damages, or a notice thereof, a preliminary injunction will not be granted to restrain the occupation of land by a railroad company after an assessment under such Act, when it appears that, as matter of fact, the land owner had actual notice of, and was present and was heard at, the meeting of the commissioners for the purpose of assessing damages, and the bill

contains no allegations of partiality, unfairness, corruption or fraud on the part of the commissioners.

7. In such a case, the court of chancery has no jurisdiction to hear or determine the fact as to the sufficiency of the damages awarded by the commissioners.

BILL TO RESTRAIN THE ENTRY UPON, AND OCCUPATION OF, LAND BY A RAILROAD COMPANY. *On application for a preliminary injunction.*—The questions presented are fully set forth in the opinion.

*Benjamin Nields* and *Edward G. Bradford, Jr.*, for the complainant :

The Constitution of Delaware provides that no man's property shall " be taken or applied to public use without the consent of his representatives, and without compensation being made." This means that the State may devest private property for public use, upon making just compensation. *Whiteman* v. *Wilmington & S. R. Co.* 2 Harrington, 514.

The defendant is authorized, if authorized at all, to condemn land for the purposes of its railroad in the same manner as was provided for the Delaware & Chester County Railroad Company. 17 Del. Laws, 296; 16 Del. Laws, 526; 13 Del. Laws, 195, 200, 201.

There is no provision of law, either express or implied, for notice to or hearing of the land owner, touching the assessment of damages.

In order to lend any countenance to the notion that the commissioners are an agency of the judge or court appointing them, it would be necessary to assume that the judge or court, in the absence of any provision of law pointing out a mode of making just compensation to the land owner, would possess a general jurisdiction over the awarding of such compensation. But such an assumption would be groundless; for it is well settled that the State cannot take private property for public use, against the consent of the owner, without providing by law a tribunal for the assessment of his damages, and that the mode of making compensation provided by law is exclusive. *Gardner*

v. *Newburgh*, 2 Johns. Ch. 162; *Bloodgood* v. *Mohawk & H. R. R. Co.* 18 Wend. 9 ; *Fletcher* v. *Auburn & S. R. Co.* 25 Wend. 462 ; *People* v. *Hayden*, 6 Hill, 359 ; *Beekman* v. *Saratoga & S. R. Co.* 3 Paige, 45 ; *Smith* v. *Helmer*, 7 Barb. 416 ; *Callender* v. *Marsh*, 1 Pick. 418; *Thacher* v. *Dartmouth Bridge Co.* 18 Pick. 501; *Perry* v. *Wilson*, 7 Mass. 393 ; *Whiteman* v. *Wilmington & S. R. Co.* 2 Harrington, 514 ; Cooley, Const. Lim. *560, 562; Dill. Mun. Corp. §§ 480, 482 ; 2 Kent, Com. *339.

The phrase " law of the land " is equivalent to the words " due process of law," and does not mean a statute working the wrong complained of. *Taylor* v. *Porter*, 4 Hill, 140 ; Cooley, Const. Lim. * 353, 354.

The Constitution of Delaware also provides that " Every man, for an injury done him in his reputation, person, movable or immovable possessions, shall have remedy by the due course of law," etc.

The Fourteenth Amendment to the Constitution of the United States provides that no State shall " deprive any person of life, liberty or property, without due process of law." While this provision operates as a restriction on the States only, it applies to all their agencies, whether legislative, executive or judicial. *Virginia* v. *Rives*, 100 U. S. 313, 318, 333 (25 L. ed. 667); *Ex parte Virginia*, 100 U. S. 339, 346 (25 L. ed. 676); *Neal* v. *Delaware*, 103 U. S. 370, 397 (26 L. ed. 574).

"Due process of law " does not necessarily involve trial by jury, but it requires notice and an opportunity to be heard. *Ex parte Wall*, 107 U. S. 265, 289, 290 (27 L. ed. 552); *Kennard* v. *Louisiana*, 92 U. S. 480, 483 (23 L. ed. 478) ; Cooley, Const. Lim. *356.

" Due process of law " must attend the exercise of the right of eminent domain, under both the State and Federal Constitutions.

There is a broad distinction in principle between determining the propriety of taking private property for public use, on the one hand, and, on the other, determining the

amount of compensation the owner is to receive by way of damages. The former is a legislative or political act, the latter a judicial act. Cooley, Const. Lim. *538, 563.

It is true that the Fourteenth Amendment does not provide that no State shall take private property for public purposes, against the consent of the owner, without just compensation. It is wholly silent upon this subject; and it may well be doubted whether that portion of the Fourteenth Amendment, providing that no State shall deprive any person of life, liberty or property without due process of law, would apply to the exercise of the right of eminent domain by a State, the Constitution of which failed to provide for the making of compensation as the condition upon which the right might be exercised. But where the State Constitution requires the making of compensation as a condition for the exercise of such right, the above provision of the Fourteenth Amendment clearly applies to the judicial or quasi judicial function involved. This, doubtless, was the distinction in the mind of *Mr. Justice* Miller, in delivering the opinion of the supreme court in *Davidson* v. *New Orleans,* 96 U. S. 97, 104, 105 (24 L. ed. 616).

If under any circumstances due process of law would be dispensed with, it would be in the apportionment of general taxation, upon the assumed ground of necessity, rather than in the exercise of the right of eminent domain. See *Murray* v. *Hoboken Land & Imp. Co.* 59 U. S. 18 How. 272, 282 (15 L. ed. 372).

Due process of law must attend the exercise of the right of eminent domain. *United States* v. *Lee,* 106 U. S. 196, 217, 218, 220 (27 L. ed. 171, 181).

The State cannot, through the Legislature, fix the amount of compensation to be received. Cooley, Const. Lim. *563; Mills, Em. Dom. § 85.

The act of assessing the damages in case of condemnation being the exercise of a judicial or quasi judicial function, notice and an opportunity to be heard must be accorded the owner. *Garrison* v. *New York,* 88 U. S. 21 Wall. 196, 204 (22 L. ed. 612).

Either the Constitution or the law must prescribe the mode in which compensation is to be made. *Beekman* v. *Saratoga & S. R. Co.* 3 Paige, 45, 75 ; *Secombe* v. *Milwaukee & St. P. R. Co.* 90 U. S. 108, 117, 118 (23 L. ed. 67).

Notice, actual or constructive, and an opportunity to be heard, being a matter of constitutional rights and an essential element of the mode, either the Constitution or law must provide, expressly or impliedly, for such notice or hearing, or the law will be unconstitutional and void so far as it relates to the power of condemnation. This results from the essential nature of statutory law, which must be complete in itself and possess its full vitality when it leaves the legislative halls; for that cannot be law which depends for its effective energy upon any other than the legislative will. *Rice* v. *Foster*, 4 Harrington, 479, 491, 492, 494, 501, 502 ; *Johnson* v. *Rich*, 9 Barb. 680, 682, 683, 686 ; *Thorne* v. *Cramer*, 15 Barb. 112, 114 ; *Bradley* v. *Baxter*, Id. 122–124 ; *Barto* v. *Himrod*, 8 N. Y. 483, 490, 494–496 ; *Parker* v. *Com.* 6 Pa. 507, 516–518, 526, 527.

The charter under which defendant derives its powers, in so far as it purports to authorize condemnation, is unconstitutional and void, owing to the omission of any provision securing to the land owner notice, either actual or constructive, of the time and place of the assessment of his damages, or a hearing in relation thereto. *Stuart* v. *Palmer*, 74 N. Y. 183 ; *Davidson* v. *New Orleans*, 96 U. S. 97, 102, 104, 105 (24 L. ed. 616) ; *San Mateo County* v. *Southern Pac. R. Co.* 13 Fed. Rep. 722, 726, 728, 729, 748–753, 762–766, 769, 770; *Santa Clara County* v. *Southern Pac. R. Co.* 18 Fed. Rep. 385, 386, 398, 409, 410, 425, 428, 444 ; *Chicago & A. R. Co.* v. *Smith*, 78 Ill. 96, 99, 100 ; *Mulligan* v. *Smith*, 59 Cal. 206, 228, 230, 243 ; *Powers* v. *Bears*, 12 Wis. 214, 222, 223 ; *Owners of Ground* v. *Albany*, 15 Wend. 375 ; *Re Middletown*, 82 N. Y. 196, 201 ; *Cupp* v. *Seneca County*, 19 Ohio St. 173, 182, 183 ; dissenting opinion of Bartley, *J.*, in *Kramer* v. *Cleveland & P. R. Co.* 5 Ohio St. 140, 147, 165–167.

A review of the facts disclosed in the case shows that no element of estoppel exists against the complainant. See *Marvel* v. *Ortlip*, 3 Del. Ch. 9–42.

This court has jurisdiction to award the injunction prayed for ; and this case is one which, according to the settled principles of equity, requires such interposition. *Wilds* v. *Layton*, 1 Del. Ch. 226 ; *Thompson* v. *Lynam*, Id. 64 ; *Tatem* v. *Gilpin*, Id. 13 ; *Fleming* v. *Collins*, 2 Del. Ch. 230 ; *Montgomery* v. *Robinson*, 4 Del. Ch. 490 ; *Curry* v. *Jones*, Id. 559 ; *Tatnall* v. *Shallcross*, Id. 634 ; High, Inj. §§ 622, 623, and cases cited.

*Levi C. Bird*, for the defendant :

As to the proceedings for the condemnation of land for railroad purposes, where the charters are granted by the Legislature (and not under the general railroad law of most of the States), it has not seemed necessary to provide for actual notice in the charter. Mills, Em. Dom. §§ 94–98 ; Pierce, R. pp. 182, 183, 146, 147 ; *Kramer* v. *Cleveland & P. R. Co.* 5 Ohio St. 140 ; *Harper* v. *Lexington & O. R. Co.* 2 Dana, 227 ; *Swan* v. *Williams*, 2 Mich. 427, 430, 441, 442 ; *Georges Creek C. & I. Co.* v. *New Central Coal Co.* 40 Md. 425, 427, 437 ; *Stewart* v. *Hinds County Police Board*, 25 Miss. 479, 482, 483 ; *Johnson* v. *Joliet & C. R. Co.* 23 Ill. 202, 203, 205, 206, 209 ; *Cupp* v. *Seneca County*, 19 Ohio St. 173 ; *People* v. *Smith*, 21 N. Y. 595–599 ; *Re New York Elev. R. Co.* 70 N. Y. 327 ; *Missouri River, F. S. & G. R. Co.* v. *Shepard*, 9 Kan. 647, 654–657 ; *Zack* v. *Pennsylvania R. Co.* 25 Pa. 394 ; *Long Island R. Co.* v. *Bennett*, 10 Hun, 91 ; *Peoria & R. I. R. Co.* v. *Walker*, 61 Ill. 53, 54 ; *People* v. *Tallman*, 36 Barb. 222 ; 9 Barb. 449.

The only case in this State bearing upon the question is *Whiteman* v. *Wilmington & S. R. Co.* 2 Harrington, 514. The court there says (p. 524) : " Independently of this consideration (viz., trial by jury), we do not see why the Legislature may not constitutionally provide for ascertaining the

amount of compensation by other means than by the intervention of a court or jury."

The Constitution of the State provides only that compensation must be made. Del. Const. § 8, art. 1. The Constitution of the United States provides that no one shall be deprived of property without due process of law, nor without just compensation. U. S. Const. art. 5.

These are the only provisions in either the Constitution of the State or of the United States that relate to the subject matter before us.

The charter provision, that the land shall not be condemned unless terms of purchase cannot be agreed upon, is in itself notice. The party knows, from the effort of the railroad company to purchase, that his land will be taken by condemnation proceedings. *Atlantic & St. L. R. Co.* v. *Cumberland County*, 51 Maine, 36; Pierce, R. 183.

It is a proceeding *in rem*, and seizure of the land is notice. This is constructive notice, and such is sufficient. *Stewart* v. *Hinds County Police Board*, 25 Miss. 479; *Pennoyer* v. *Neff*, 95 U. S. 727 (24 L. ed. 570); *Georges Creek C. & I. Co.* v. *New Central Coal Co.* 40 Md. 425; *New Orleans, J. & G. N. R. Co.* v. *Hemphill*, 35 Miss. 17; *Boonville* v. *Ormrod*, 26 Mo. 193; *Peoria & R. I. R. Co.* v. *Warner*, 61 Ill. 52; *Baltimore & O. R. Co.* v. *Pittsburg, W. & K. R. Co.* 17 W. Va. 812; 51 Maine, 36.

The building of a railroad is a public work,—one of which the whole public have notice. And the Legislature contemplated that the refusal of the land owner to permit the entry of the railroad company upon the land was notice sufficient to him. 40 Md. 425.

The complainant has waived the right to set up want of notice in the charter by his actual appearance by counsel, and selection of commissioners named by him to condemn his land. Pierce, R. 183; *Long Island R. Co.* v. *Bennett*, 10 Hun, 92; 6 Paige, 83; Cooley, Const. Lim. 219, 702, note 2; 13 Gray, 31; 5 N. Y. 434, 441; *People* v. *Quigg*, 59 N. Y. 83, 89, and cases cited; *Cruger* v. *Hudson River R. Co.* 12 N

Y. 201; *Boston & M. R. Co.* v. *Folsom,* 46 N. H. 64, 66, 67; *East Saginaw & St. C. R. Co.* v. *Benham,* 28 Mich. 463; *Copeland* v. *Packard,* 16 Pick. 217; 25 Ill. 107; 45 N. Y. 102, 104; *People* v. *Burton,* 61 N. Y. 452; 3 N. Y. 511, 518; 47 N. H. 223, 225.

This entry upon the land in question was not illegal or unconstitutional for the reason that the charter did not provide for an appeal. Mills, Em. Dom. §§ 322, 323; *Western Maryland R. Co.* v. *Patterson,* 37 Md. 125; *Western Union R. Co.* v. *Dickson,* 30 Wis. 389, 391, 392; *Kramer* v. *Cleveland & P. R. Co.* 5 Ohio St. 140; *Wilmington & S. R. Co.* v. *Condon,* 8 Gill & J. 443; *Smith* v. *Taylor,* 34 Tex. 589; 42 Conn. 137.

Mere silence of the Act on the subject of appeals, or failure to provide for appeals, will not exclude an appeal, as in ordinary cases. Mills, Em. Dom. 323; *Pemigewasset Bridge Proprietors* v. *New Hampton,* 47 N. H. 151.

The legislative provision prohibiting appeals would not preclude a resort to other methods for the correction of the finding, where irregularity, mistake or fraud have interfered. *Garrison* v. *New York,* 88 U. S. 21 Wall. 196 (22 L. ed. 612); *Harwinton* v. *Catlin,* 19 Conn. 520; Mills, Em. Dom. 323.

The question of adequacy of damages is to be remedied by appeal. *State* v. *Hulick,* 4 Vroom, 307; *Johnston* v. *Rankin,* 70 N. C. 550.

A court of chancery, or a court of law exercising equity jurisdiction, will not dispose of a constitutional question (which involves a question of so serious results to the defendant) upon a preliminary hearing. *Deering* v. *York & C. R. Co.* 31 Maine, 172; *Lohman* v. *St. Paul, S. & T. F. R. Co.* 18 Minn. 174.

THE CHANCELLOR.—The complainant is a citizen of the State of Pennsylvania, a nonresident of this State, owning a farm in New Castle County.

The defendant is the Baltimore & Philadelphia Railroad Company, a corporation under the laws of this State.

On the 5th day of February, 1867, an Act was passed by the Legislature incorporating the Delaware & Chester County Railroad Company. By Act of March 10, 1869, the name of the corporation was changed to the Wilmington & Western Railroad Company. The original Act has been subject to sundry amendments, and the name of the corporation is now the Baltimore & Philadelphia Railroad Company.

The bill is filed by the complainant to restrain the defendant from constructing a railroad across his land in New Castle County, on the ground, as he alleges, that section 13 of the charter of the company is unconstitutional and void, owing to the omission therein of any provision securing to the land owner notice, either actual or constructive, of the time and place of the assessment of his damages, or of a hearing in relation thereto.

He contends that the assessing the damages in case of condemnation is the exercise of a judicial or quasi judicial function, and that notice and an opportunity to be heard must be accorded the owner. He contends that notice, actual or constructive, and an opportunity to be heard, being matters of constitutional right and essential elements of the mode in which compensation is to be made, either the Constitution or law must provide, expressly or impliedly, for such notice or hearing, or the law will be unconstitutional and void so far as it relates to the power of condemnation ; and that this results from the essential nature of statutory law, which must be complete in itself and possess its full vitality when it leaves the legislative halls,—that not being law which depends for its effective energy upon any other than the legislative will.

The defendant claims the right to take possession of the plaintiff's land under its charter for the construction of its road, because the State, through its Legislature, in granting such rights did so in the exercise of the right of eminent domain,—a right inherent in every sovereignty to take the private property of the citizen when necessary for a public use ; that the complainant was not entitled to notice and hearing, as a matter of constitutional right, of the time and place

for the assessment of his damages; and that if he was so entitled he received actual written notice thereof and appeared upon the premises before the commissioners legally appointed to assess his damages, by his counsel, and was heard in relation to the amount of compensation which should be awarded him by the commissioners; and that by so doing he waived any objection that he could or might have had, on the ground that the Act of the Legislature or charter of the company did not expressly provide on its face for a notice to him, as a land owner, of the time and place of the meeting of the commissioners to assess his damages.

To this contention by the defendant the complainant replies that the Act or charter itself, being unconstitutional and void, was no law, and therefore there was nothing that could be waived in respect to it; that by the Constitution of the State he could not be deprived of his property except by the law of the land or by due process of law, which are equivalent expressions of the same thing.

The argument on both sides has been very elaborate and very able.

It is useless to speculate on the origin of the power of the State to take or authorize the taking of private property for public use, or whether it is or is not contrary to natural justice. It exists, and the only limitation upon its exercise is that contained in the Constitution.

When *Judge* Baldwin therefore says, in the case of *Bonaparte* v. *Camden & A. R. Co.* 1 Baldw. 220, that " It is a settled principle of American jurisprudence that the transcendent powers of Parliament devolved on the people of the several States by the Revolution," he, in effect, only says that the people of the several States by that event became independent sovereignties, for the right to take private property for public use is an inherent right in all sovereignties. It is called the " right of eminent domain," and is the rightful authority which exists in every sovereignty to control and regulate these rights of a public nature which pertain to its citizens in common, and to appropriate and control individual

property for the public benefit, as the public safety, necessity, convenience or welfare may demand. This power is exercised through the Legislature. The only restraint upon the power of the Legislature of this State is that imposed by the State or Federal Constitution.

In deciding constitutional questions, judges are not at liberty to speculate in respect to natural rights or abstract principles of natural justice. The Constitution is the chart by which they should be guided, and to it only can they look as the rule to which their decisions must conform.

The only restraint which the Constitution of the State imposes upon the exercise of the right of taking private property for public use is that compensation shall be made for the taking.

The Constitution of the United States imposes no restraint upon the States in this respect. The restrictive words " Nor shall private property be taken for public use without just compensation," in the fifth article of the amendments to the Federal Constitution, do not apply to the States, but only to the General Government. Their insertion in that amendment shows the caution of our forefathers, and their dread of the usurpation of power. They were learned in the history of monarchies and despotisms. They had observed the tendency of all governments to absolutism ; and although the Federal Government which they had created and established possessed no right of eminent domain in a single foot of territory within the limits of any State, they inserted these words in the Constitution more effectually, as they supposed, to guard against the encroachments of undelegated power.

The Legislature of the State is the sole judge of the necessity or expediency of the exercise of the right of eminent domain.

The provision of the Constitution of this State upon this subject is in these words: " Nor shall any man's property be taken or applied to public use, without the consent of his representatives and without compensation being made."

The Constitution does not declare what a "public use" is ; this is a judicial question.

The Constitution does not describe the mode or means by which compensation shall be ascertained. These therefore can only be prescribed by the Legislature.

Different modes for the assessment of damages to the owner of property, or for ascertaining the compensation which ought to be made him for the taking of his property, have been adopted in different States and at different times.

The writ of *ad quod damnum* has sometimes been used for this purpose. This is an *ex parte* proceeding; it is not, in a common-law sense nor in a constitutional sense, a jury trial; it was originally a writ to inquire whether a grant intended to be made by the King would be to the damage of himself and others.

The making of a new highway or the change of an old one was an act of sovereign power, and the writ was used at the mere motion of the sovereign himself to inform his conscience. The jury under such a writ made an inquisition and returned the same into chancery.

The uniform mode adopted in this State, and the one generally adopted in the other States, is by commission, issued by a court in term time, or by a judge thereof in vacation, directed to certain persons, commanding them to go upon the premises and assess the damage which the owner of the land will sustain by reason of the taking of the same. Such a proceeding is not a jury trial. It is in no just sense of the term a judicial proceeding. It is sometimes called a quasi judicial proceeding. Its nature, character, duties and powers depend entirely upon the Act of the Legislature authorizing the appointment. Whatever that Act commands to be done the commissioners must do. The Act is their warrant of authority. It must be strictly pursued. If it is so pursued, and is a law,—that is, does not conflict with or violate the Constitution of the State,—the action of the commissioners should be sustained.

Sections 7, 8 and 9 of article 1 of the Constitution of this State are as follows:

"§ 7. In all criminal prosecutions the accused· hath a

right to be heard by himself and his counsel; to be plainly and fully informed of the nature and cause of the accusation against him ; to meet the witnesses in their examination, face to face; to have compulsory process in due time, on application by himself, his friends or counsel, for obtaining witnesses in his favor, and a speedy and public trial by an impartial jury ; he shall not be compelled to give evidence against himself, nor shall be deprived of life, liberty or property, unless by the judgment of his peers or the law of the land.

"§ 8.   No person shall, for any indictable offense, be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger, and no person shall be for the same offense twice put in jeopardy of life or limb ; nor shall any man's property be taken or applied to public use without the consent of his representatives and without compensation being made.

"§ 9.   All courts shall be open, and every man for an injury done him in his reputation, person, movable or immovable possessions, shall have remedy by the due course of law, and justice administered according to the very right of the cause and the law of the land, without sale, denial, or unreasonable delay or expense ; and every action shall be tried in the county in which it shall be commenced, unless when the judges of the court in which the cause is to be tried shall determine that an impartial trial therefor cannot be had in that county.   Suits may be brought against the State, according to such regulations as shall be made by law."

Mr. Webster, in *Dartmouth College* v. *Woodward*, 17 U. S. 4 Wheat. 581 (4 L. ed. 645), said : "By the law of the land is most clearly intended the general law; a law which hears before it condemns ; which proceeds upon inquiry and renders judgment only after trial.   The meaning is that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society.   Everything which may pass under the form of an enactment is not, therefore, to be considered the law of the land."

Due process of law and due course of law mean the same thing. The meaning is that a prosecution or suit must be instituted and conducted according to the prescribed forms and solemnities for ascertaining guilt or determining the title to property. Under it the same measure of protection against legislative encroachment is extended to life, liberty and property; and if the latter can be taken without a forensic trial and judgment, there is no security for the other. Sedg. Stat. & Const. L. 474.

It is clear that sections 7, 8 and 9 of article 1 of the Constitution have relation to distinct and different subject matters; section 7 relates to the rights of an accused person in criminal prosecutions; section 8 relates to exemption from trial by criminal information,—except in certain enumerated cases,—to being twice put in jeopardy of life and limb for the same offense; and to the taking or application by the State in the exercise of the right of eminent domain of private property to public use; section 9 has reference to suits or actions. I do not consider that it has any application to the process in the exercise of the right of eminent domain.

The provision of section 8 in respect to the exercise of the right of eminent domain by the State is, "Nor shall any man's property be taken or applied to public use without the consent of his representatives, and without compensation being made."

It is remarked by Mr. Sedgwick, in his work before alluded to, that when a tax is levied, private property is clearly taken for public use, and taken without compensation, and so in other cases. The restriction, he says, on taking private property without making compensation is confined to only one branch of the public authority over private rights of property, and does not apply to the power of taxation or to the general police powers of the Legislature.

What is the nature of the powers of the State over property? They embrace not only the power of taxation, powers in respect to the purposes of police, public health and public morals, but also the power of taking private property when

any public interest calls for it.   If the general welfare demands it, private rights must give way and the property of the individual must be surrendered to the general welfare.

In this State, and generally, I suppose, in this country, a restraint has been put upon the power which commands and forces these concessions of private rights of property to public uses; and in cases like the present the right cannot be exercised by the State without compensation being made.

This limitation, however, does not apply to every branch of the power of eminent domain.   It is only, says Mr. Sedgwick, intended to operate on the exercise of the legislative power where property is taken for objects of general necessity or convenience,—such as roads, canals, public buildings, public works of all kinds,—and does not attach to the power of taxation or the general authority over property with reference to public health or public morals.

Neither the provision in our Constitution, that private property shall not be taken for public use without just compensation, nor that declaring that every man, for an injury done to him in his reputation, movable or immovable possessions, shall have remedy by the due course of law, limits the legislative power in regard to taxation.

From what has been already said, it appears that there is a distinction between the power of eminent domain and that of taxation.   Taxation exacts property from individuals as their respective and proportionate shares of contribution to a public burden.   Private property taken by the power of eminent domain is taken irrespective of this consideration.   Taxation operates upon persons and things by some rule of apportionment. The exercise of eminent domain operates without any reference to what is exacted from others.   The taking of money by a tax is not a taking of private property for public use, within the meaning of the constitutional provision concerning eminent domain.

If the Act of the Legislature incorporating the defendant company is unconstitutional, or rather if section 13 of that Act be unconstitutional, it must be because it contains something

that the Constitution forbids, or omits something which the Constitution requires or renders necessary to be stated.    I do not understand that the complainant contends that the Act should have provided for the determination of the amount of his compensation by a jury, but that it should have secured to him in the determination of that fact what is generally known as due process of law, or a hearing upon that question according to the law of the land.

By the words " law of the land," in section 7 of article 1 of the Constitution, I understand indictment by a grand jury, trial by a petit jury, and judgment of a court of competent jurisdiction, pronounced upon the verdict rendered by the jury.

By the words " due course of law " and " the law of the land," in section 9 of the same article of the Constitution, I understand summons or notice, appearance of parties, pleadings to issue of fact or law, trial by jury of fact, and judgment of a competent court upon verdict rendered upon facts, or judgment of the court upon issues of law,—in both cases the proceedings to be according to the usual practice of said courts.

Juries are for the trial of issues of fact in civil and criminal proceedings, and are not necessarily required in the assessment of land damages.    The persons appointed to assess damages in cases of this kind do not perform the proper and usual functions of a jury.    They act under a special commission, and in a particular case their proceedings are intended to be summary; their commission, issued conformably to the terms of the Act, points out to them their duty ; there is no other law, constitutional or legislative, which prescribes their duties.    If I am correct in the opinion already stated, that sections 7 and 9 of article 1 of the Constitution have no relation to the summary proceeding in cases arising under the law of eminent domain, I am at a loss to perceive how the complainant has been denied the benefit of any due process of law, or law of the land, to which he was constitutionally entitled.

When section 8 declares that " No man's property shall be taken or applied to public use without the consent of his representatives and without compensation being made," it does

not prescribe any tribunal or mode by which that compensation shall be determined. The tribunal and the mode, and the manner of determining the matter of compensation, is necessarily left, in the absence of constitutional provision, to the Legislature. Condemnation is not an action at law, but an inquisition on the part of the State for the ascertainment of a particular fact,—damages to the owner or compensation therefor.

I have examined all the charters incorporating railroad companies that have been passed by the Legislature of this State,—more than fifty in number. The uniform practice has been the appointment of commissioners to assess damages or award compensation. In thirty-one of these Acts notice to the owner of the land to be taken, if within the State, was required. In nine, where notice is required, the words "if within the State" are omitted. In twenty-five, a writ of *ad quod damnum* is allowed,—in some where notice was required, but mostly where such notice was omitted. In nineteen, no notice was required to be given the owner of the time and place for the assessment of damages. In seven, appeals have been allowed. In twenty-eight, no writ of *ad quod damnum* or appeal is allowed to the owner. In only three is provision made for notice in case the owner is out of the State, and in these three cases notice is to be given to the tenant or occupier. It will thus be seen that the practice in the State has not been entirely uniform in respect to the giving of notice.

Many public roads have been laid out in this State by the authority of the Legislature, under special Acts for that purpose. I recollect none in which notice was required to be given to the land owners, over whose lands such roads were to be located, of the time and place of assessing their damages.

In our general law in respect to laying out public roads, where notice is required to be given of the application to the court for the appointment of commissioners to lay out the same, no notice is required to be given to the land owners of the time and place of assessing their damages; but the commissions in these cases are returned to the court, and of course are subject to its approval or disapproval.

The complainant in this case contends that notice, actual or constructive, and an opportunity to be heard, are matters of constitutional right, and essential elements of the mode in which compensation is to be made; and that the Constitution or law must provide, expressly or impliedly, for such notice or hearing, or the law will be unconstitutional and void so far as it relates to the power of condemnation.

To render the jurisdiction of a court effectual in any case, it is necessary that the thing in controversy, or the parties interested, be subjected to the processes of the court.   Cooley, Const. Lim. 504.

This is undoubtedly true, and process in cases contemplated by section 9 of article 1 of our Constitution, if not waived, is undoubtedly necessary.   Process would be necessary in order to give a defendant notice, and notice in such judicial proceedings is jurisdictional.

Bishop, in his work on Written Laws, 141, says: "The common law, the spirit of all law, and the plainest principle of justice, forbid the taking of judicial steps against a person without notice to him, and the opportunity to be present and be heard.   Therefore a statute will not be interpreted, unless its words are specific, requiring it to authorize judicial proceedings without notice to a party to be affected by them."

Suppose, however, the statute is silent upon the subject of notice, neither requiring it to be given nor requiring it not to be given, how is such a statute to be interpreted?   Would the statute be unconstitutional?   Where the proceedings are in a court of general jurisdiction, whose proceedings are according to due process of law, and the rights of parties are required to be determined according to the due course of law, there can be no doubt that notice is jurisdictional.

"Certain cases (says Cooley on Constitutional Limitations, 504) are said to proceed *in rem*, because they take notice rather of the thing in controversy than of the persons concerned, and the process is served upon that which is the object of the suit, without specially noticing the interested

parties; while in other cases the parties themselves are brought before the court by process." If a personal judgment is sought against a party, due process of law would require appearance or personal service.

Is the assessment of damages certified to by commissioners appointed by a court or a judge,—which certificate is to be delivered to the parties interested, respectively, and not to the court or judge,—a judicial proceeding? And are these proceedings to be regulated in the same manner and governed by the same rules as the proceedings in a suit at law in courts of general jurisdiction? The commissioners are authorized to render no judgment either against the person or the thing. They assess damages. They make an award which binds nothing. No execution or other process can be issued thereon, and no proceedings can be taken under it, until the money is paid or deposited as the Act prescribes. What are they appointed to do? Not, certainly, to determine whether the land owner's property shall be taken for public use,—the Legislature, by passing the Act authorizing it to be taken, has determined that, and it alone has the authority to determine that matter; not to determine the injury done him in his immovable possessions, by the due course of law, and to administer justice according to the very right of the cause and the law of the land, in an open court where such an injury is to be redressed according to section 9, article 1, of the Constitution of the State; but they are to assess or estimate in a summary way what compensation shall be made to the land owner by reason of the taking of his land by authority of the Legislature legally for a public use.

The restriction contained in the Constitution upon the taking of private property for public use is only that which the people of the State (or the State, for the terms are equivalent) have imposed upon themselves. Without such restriction the State could have taken private property without compensation, for this is a power necessarily inherent in every sovereignty. The sense of justice and right, however, has caused the people of this and of every State in the Union, per-

haps, to incorporate substantially this restriction in their organic law.

The Legislature did not provide for notice to either party, of the time and place of the meeting of the commissioners to make the assessment. They left it discretionary with either party to apply for the commission.

Being appointed, what was the duty of the commissioners? To go upon the land, make the assessment, and certify the assessment to both parties. Were the commissioners bound to give notice to either party of the time of their going upon the land to make their assessment? The Act does not make it their duty. Was the party applying for the commission bound to give notice to the other party? The Act did not make it his duty. What did the commissioners fail to do that their commission made in conformity to the Act required them to do? Nothing, unless their assessment was of an insufficient amount; and in respect to this the complainant alleges in his bill, in substance, that he should have been awarded by the commissioners, as compensation, $10,000, whereas they only awarded him $3,500.

This court has no jurisdiction to hear or determine this fact. The bill contains no allegation of partiality, unfairness, corruption, or fraud on the part of the commissioners; such conduct on their part would, in the absence of any other cause and for any of these causes, entitle the complainant, whatever might have been the provisions or omissions of the Act of the Legislature, to come into this court and ask for an injunction against the railroad company, enjoining it against constructing its road upon and across the land of the complainant.

The complainant admits, through his counsel, the statement in the answer of the defendant, that the defendant through its agents gave personal or written notice to the complainant of the time and place of the meeting of the commissioners to make their assessment, and that the complainant, by his counsel appeared before the commissioners and was heard in respect to the assessment. Notwithstanding these

admissions and these facts, the complainant contends that the commissioners were an unconstitutional tribunal for determining the question of damages or compensation for the taking of the complainant's land; the Act of the Legislature under which the assessment purported to be authorized being unconstitutional and void, because it did not provide, either expressly or impliedly, that the complainant should have notice of the time and place of the meeting of the commissioners to make the assessment.

Complainant contends that the fact that he had notice of the time and place, and appeared before the commissioners by his counsel, and had taken part in the appointment of the commissioners by the judge in vacation, cannot avail in this case, because the Act itself being, as he contends, unconstitutional and void, there was nothing for the plaintiff to waive; and the appearance by him before the commissioners could cure no defects and impart no validity to the Act itself, or to the proceedings under it.

Much of the contrariety of opinion expressed by jurists upon the subject of taxation, and in respect to the exercise of the right of eminent domain by the State, has arisen from the supposed necessity or otherwise of the application of the words "due process of law" to those subjects.

*Mr. Justice* Johnson, in *Columbia Bank* v. *Okely*, 17 U. S. 4 Wheat. 235 (4 L. ed. 559), speaking of these words, says: "The good sense of mankind has at length settled down to this: that they were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice."

*Judge* Tucker, the able Virginia jurist, in *Kinney* v. *Beverley*, 1 Hen. & M. 531, says that "The meaning of these words is that no man shall be deprived of his property, without first being heard in his own defense."

*Judge* Edwards, in *Westervelt* v. *Gregg*, 12 N. Y. 209, says: "Due process of law undoubtedly means in the due course of legal proceedings, according to the rules and forms

which have been established for the protection of private rights."

*Judge* Miller, in the case of *Davidson* v. *New Orleans*, 96 U. S. 97 (24 L. ed. 616), says, in substance, that courts will not attempt to define what is due process of law; this is to be determined, he says, by the process of inclusion and exclusion, and this medico-legal expression seems to have become somewhat popular in subsequent decisions in some of the State Courts; more, I suppose, by reason of its antithesis in terms, than by any definitiveness of meaning.

Mr. Blackwell, in his work on Taxation, p. 29, says : " In every case where the title to real or personal property is .sought to be devested under the general laws of the land, judicial proceedings always intervene."

There is no difference in principle between the power of taking land for public use, and the power to tax and enforce its collection by a sale of the land. In both cases the land is taken for the use of the public; they differ only in degree. Why, then, should not the same solemn forms be pursued in the one case as in the other? The only answer is, state necessity and immemorial usage; the former demands, and the latter sanctions, this departure from the letter and spirit of the Constitution.

I now proceed to an examination of some of the leading cases cited by the complainant's counsel in support of his contention :

In the case of *Stuart* v. *Palmer*, 74 N. Y. 183, Earle, *J.*, delivering the opinion of the court, said : " I am of opinion that the Constitution sanctions no law imposing such an assessment without a notice to and a hearing, or an opportunity of a hearing, by the owners of the property to be assessed. It is not enough that the owners may by chance have notice, or that they may, as a matter of favor, have a hearing. The law must require notice to them, and give to them a right to a hearing and an opportunity to be heard. It matters not, upon the question of the constitutionality of such a law, that the assessment has in fact been fairly apportioned. The con-

.5 Del. Ch. 35

stitutional validity of law is to be tested, not by what has. been done under it, but what may, by its authority, be done.. The Legislature may prescribe the kind of notice and the mode in which it shall be given, but it cannot dispense with all notice." Again he says: "An Act of the Legislature arbitrarily taking property for the public good, and fixing the compensation to be paid, could not be upheld. There would in such case be the absence of that 'due process of law' which both the Federal and State Constitutions guarantee to every citizen. . . . It is a rule founded on the first principles of natural justice, older than written constitutions, that a citizen shall not be deprived of his life, liberty or property without an opportunity to be heard in defense of his rights, and the constitutional provision that no person shall be deprived of these 'without due process of law' has its foundation in this rule." Again he says: "Due process of law is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty or property, whether the proceeding be judicial, administrative or executive in its. nature."

Here much is assumed. Did the Constitution of New York provide that private property should not be taken for public use unless upon due process of law? Does the Constitution of this State so say? Nothing of the kind. Section 9 of article 1 of our Constitution has no application to the question, neither has section 7 of that article; section 8. alone has.

The opinion of *Mr. Justice* Earle was a very able opinion,. and well worthy of the deference and respect which has subsequently been paid to it by judges in other States. It. was upon the subject of taxation, and is a leading case on that subject. It was cited by the complainant in support of his position that the charter of the defendant, in so far as it. purports to authorize condemnation, is unconstitutional and void, owing to the omission of any provision securing to the land owner notice, either actual or constructive, of the assessment of his damage, or a hearing, in relation thereto.

The following cases were also cited in support of the same:

position : *Davidson* v. *New Orleans*, 96 U. S. 97, 102, 104, 105 (24 L. ed. 616); *San Mateo County* v. *Southern P. R. Co.* 13 Fed. Rep. 722, 726, 728, 729, 748–753, 762–766, 769, 770; *Santa Clara County* v. *Southern P. R. Co.* 18 Fed. Rep. 385, 386, 398, 409, 410, 425, 428, 444; *Chicago & A. R. Co.* v. *Smith*, 78 Ill. 96, 99, 100; *Mulligan* v. *Smith*, 59 Cal. 206, 228, 230, 243; *Powers* v. *Bears,* 12 Wis. 214, 222, 223; *Owners of Ground* v. *Albany*, 15 Wend. 375; *Re Middletown*, 82 N. Y. 196, 201; *Cupp* v. *Seneca County*, 19 Ohio St. 173, 182, 183; dissenting opinion of Bartley, *J.*, in *Kramer* v. *Cleveland & P. R. Co.* 5 Ohio St. 140, 147, 165–167.

It would extend this opinion too long to enter into a critical examination of all these authorities, and to extract from them. I have, however, carefully examined all of them. None of them are or can be stronger in support of the complainant's contention than the case of *Stuart* v. *Palmer*, 74 N. Y. 183; and it must be admitted that if that case is law, and applicable in this State to the taking of private property for public use upon compensation being made, under the right of eminent domain, as authorized by section 8, art. 1, of our Constitution, the complainant has shown that his contention is justified.

The court, in the case of *Santa Clara County* v. *Southern Pacific Railway Company*, cited by the complainant, says : "We think the court was fully justified in the *San Mateo Case* in expressing the belief that the authorities established, beyond all controversy, that somewhere in the proceeding of assessing a tax upon property, where it is necessary to ascertain its amount, character and value as a means of apportionment under a law or State Constitution,—at some point before the assessment became finally and irrevocably fixed,—the statute or State Constitution must provide for notice to be given to the owner of the property taxed, and an opportunity be afforded to make objections and be heard upon them."

This view was strongly pressed by complainant's counsel in the argument of the present case, and the provisions of

our own general tax law, which give a right of appeal from the assessment of the assessors to the Levy Court of the county, were referred to.

It will be perceived that, in the concluding lines of the above extract, *Judge* Sawyer speaks of assessing a tax on property, where, he remarks, it is necessary to ascertain its amount, character and value as a means of apportionment under a law or State Constitution.

The judge in the case of *Gatch* v. *Des Moines,* a case not cited in the argument, but reported in 63 Iowa, 718, also assigns reasons why notice should be given to the owner when his property is to be taxed. He says : " There are many questions which it may be proper for the owner to present to the council. He should have the right to present the questions whether or not his property, under a proper construction of the ordinance, is subject to the assessment ; whether it is all within the requisite limits ; and whether the calculation of the superficial area of his lot, made by the officer charged with that duty, is correct. These, and many other questions, may arise which require the exercise of judgment and discretion, and upon which it is the right of the owner of the property sought to be assessed to be heard."

Do the circumstances alluded to in these two cases, and the reasoning in respect thereto, exist in this case ? Is it necessary for the purposes of this case to question the doctrine announced in any of these cases, when strictly applied to the subject matter before the respective courts making the decisions ? And though the principles announced be true in cases arising under the law of taxation, does it follow of course that the same principles are applicable to cases arising under what may be peculiarly called the law of eminent domain as it exists in this State?

In the case of *Jordan* v. *Hyatt,* 3 Barb. 275, the court says : "It seems to be the better opinion that the clause of the Constitution which prohibits the taking of private property without due process of law refers to a transfer from one person to another, and not to the taking of private property for

public use.   It means that the Legislature shall not have the power to take the property of one person and give it to another by a mere enactment; but that to effect such a change there must be a suit or proceeding in some court or before some magistrate, and a judgment thereon, according to due course of law."

No case was cited by the complainant's counsel in which it has been expressly decided by any court—the question being before the court for determination—that commissioners lawfully appointed to assess the amount of compensation to be made to the owner of land taken by virtue of a charter to construct a railroad thereon can only lawfully act under their commission after notice given to the owner of the land of the time and place of making the assessment.  No case has been cited showing the necessity of hearing testimony of witnesses to be brought before the commissioners, nor that the commissioners were bound to make their assessment upon anything else than their own view, where the Act of the Legislature authorizing the taking did not so provide.

The provisions of the Act must be strictly complied with; if it provides for notice, notice must be given, and in the manner prescribed by the Act; if the Act requires that the testimony of witnesses shall be heard, or that the amount of compensation shall be determined upon testimony, the witnesses of the parties must be heard, if desired by them.   In short, everything that the Act requires to be done must be done.

In the present case the commissioners were not appointed to determine the propriety of taking or condemning the land of the complainant for public use.  The Legislature,  to whom that function exclusively belongs, determined that fact. The Legislature said, in the Act incorporating the company, that the lands should be taken upon compensation being made, and provided for the appointment of the commissioners to go upon the land and assess the compensation.   How assess the compensation ?   The only thing the commissioners were required to do was to go upon the land and assess.   Not being

required to hear the statement of the parties, to hear witnesses, or to determine upon the testimony of witnesses; and there being no general law requiring that the amount of compensation shall be determined in any particular manner; and the proceeding not being such as is contemplated either in section 7 or 9 of article 1 of the Constitution of the State, which speak of the law of land and due process of law,—how else were they required to make their determination than according to their appointment and the statute which provided for their appointment and prescribed their duty?

Under the charter of the company, either party might apply for the appointment of commissioners. Suppose the complainant had applied for their appointment, would he have been bound to give notice to the company of the time and place of the assessment by the commissioners of the compensation to be awarded by them? If not, why not?

If the complainant was entitled to receive the amount assessed, the company was bound to pay the amount so assessed. The one was entitled to receive and the other bound to pay. It would seem, therefore, in reason, that upon a change of parties, as to the application for the appointment of commissioners, a change would result in the right to notice, upon the hypothesis that notice is necessary.

Has any case been shown, or can any case be shown, where a railroad company seeking the condemnation of land has been declared entitled to notice of the time and place of assessing damages, where the application for the appointment of commissioners has been made by the owner of the lands condemned?

Has or can any case be shown where a law has been declared unconstitutional in the case of a proposed condemnation of land for public use or for the construction of a railroad, for the reason that the law, in terms or impliedly, did not provide for notice to the owner of the land of the time and place of assessing damages?

How stands the law upon this subject, as declared in the text books and as decided in the few cases cited in the argu-

ment on this precise point? The text books and reports are full of references to cases where the subject of notice has been treated, but these are mostly in respect to when, how and upon whom notice should be served, when expressly or impliedly provided for in the Act of the Legislature, and not as to the question as to the necessity of such notice being provided for in the Act.

Mills on Eminent Domain, § 84, says: "It is not absolutely necessary that the owner should have an opportunity of appearing before the tribunal. It is not necessary to invest the proceedings with the forms or substance of legal process. The Act may allow the owner to intervene, or may leave the whole matter to the discretion of the tribunal." Again (§ 94) he says: "If the law does not require notice to be given, it has been considered not essential to give notice to the owner."

Pierce on Railroads, 182, 183, says: "Under the usual constitutional provision, parties are not entitled to notice of a hearing upon the question of the necessity and expediency of appropriating their property to a public use, though such notice is sometimes required by statute. Notice of the application for the appointment of appraisers, and of the time and place of their meeting to assess the damages, is usually directed by statute, and, upon general principles of justice, ought to be ordered in the absence of any statute requirement. The denial of all opportunity to be heard on the right to and amount of compensation would be depriving the citizen of his property without due process of law;" and he refers for this last expression of opinion to *Stuart* v. *Palmer*, 74 N. Y. 183, which has already been sufficiently considered, and directs attention to *Johnson* v. *Joliet & C. R. Co.* 23 Ill. 202. He also says: "An Act authorizing the taking of property is not unconstitutional for the reason that it does not require notice, and the court may order one to be given."

Cooley (Const. Lim. 704) says: "And if a jury is provided, the party must have the ordinary opportunity to appear when it is to be impaneled, that he may make any

legal objections.   And he has the same right to notice of the time and place of assessment that he would have in any other case of judicial proceedings, and the assessment will be invalid if no such notice is given."

Text books in general are not very reliable authorities; they are made up too much of the statements of general principles, everywhere recognized, with principles decided upon the wording of particular statutes.   Adjudged cases themselves must be examined to ascertain the extent of the ruling of courts, and the reasonings upon which the rulings are founded.

In the case of *Chesapeake & O. Canal Co.* v. *Georgetown Union Bank,* 4 Cranch, C. Ct. 75, speaking of proceedings under a writ of *ad quod damnum,* the court says : " In none of the forms (of this writ) is the sheriff required to give notice to any of the parties ; nor does the oath in the present case require the jurors themselves to say whether notice was given or not.   It seemed to be admitted in argument that notice had been actually given to Mr. Beverley, the president of the Union Bank, and that he attended.   If such was the fact, I do not think the inquisition should be set aside, merely because it does not in itself contain the evidence of notice."

In the case of *Harper* v. *Lexington & O. R. Co.* 2 Dana, 227, the court says : " We do not perceive the necessity for giving the owner of the land personal notice of the time and place for the meeting of the jury, as contended for by the counsel for Harper.   The law has not required such notice, and therefore we are not disposed to regard it as indispensable, although there is much propriety in giving it.   There may be cases where it could not be given, except by advertisement, against persons unknown.   In this case, however, we suppose, from an indorsement on the warrant of ' executed,' and all the subsequent proceedings, that Harper had notice. The jury are to make their assessment upon their own view, and hence there is not the same necessity for notice as if they had to decide on evidence furnished by the parties."

In the case of *Swan* v. *Williams,* 2 Mich. 441, it is said : " It is lastly objected to the constitutionality of this Act that

it contains no provisions for notice to be given to the owner of the lands to be taken of the proceedings to assess the damages for the appropriation of his property, that he may participate in them. Upon this point the ordinance and the Constitution are entirely silent,"—quoting from the case of *Beekman* v. *Saratoga & S. R. Co.* 3 Paige, 75, the words: " When, therefore, the Constitution provided that private property should not be taken for public uses without just compensation, and without prescribing any mode in which the amount of compensation should be ascertained, it is fairly to be presumed the framers of that instrument intended to leave that subject to be regulated by law, as it had been before that time, or in such other manner as the Legislature in their discretion might deem best calculated to carry into effect the constitutional provision, according to its spirit and intent." The court remarked: " Whether, then, the Act did or did not require notice to be given to the plaintiff would not determine its constitutionality. That it contemplated that notice should be given to the owner is apparent from its phraseology; for he is authorized to assist in striking the jury that shall assess, and upon the return of their inquisition into the circuit court, by which it is to be confirmed, he may show cause against it. This question of notice is, then, addressed to the court before which the inquisition is returned, and they will always see to it,—as is their duty,—that a party shall be deprived of no rights from want of notice of the proceedings."

In the present case the certificate of the commissioners was not, by the Act, required to be made to any court, but to the parties themselves.

This objection of the want of notice was raised by the owner of land in the case of *Stewart* v. *Hinds County Police Board*, 25 Miss. 479. In the statutes of that State no provision had been made in relation to notice on the subject of condemning lands to be used as public roads. The judge treated the proceedings as *in rem*, and held the proceedings valid.

The same question arose in the case of *Johnson* v. *Joliet*

*& C. R. Co.* 23 Ill. 203, which was a case in respect to the condemnation of land and the assessment of damages. Under the Act of the Legislature the Governor appointed the commissioners. The plaintiff brought an action of trespass against the company, to which it pleaded the Act of the Legislature as a justification. Among other things, the court remarked: " It is said that private property cannot be taken without notice to the owner, yet the Legislature may prescribe the form and mode of notice. But it may be asked, How can a court prescribe a notice,—its form and mode of service in such case? Should a court require notice, what other notice known to the common law is there than personal notice? Constructive notice by publication is the creature of the statute, and courts cannot make law. Had the Legislature, in this case, prescribed the ordinary notice by posting or publishing in a newspaper, which the owner might never see, it will be perceived that his condition would be precisely as it is now in case he should show that he did not receive actual notice." The court also remarked : " We cannot understand by what authority courts shall say, in cases of this kind, where the State is exercising its right of eminent domain, and notice cannot be given, notice shall be given, when the law does not say so, or how they can require any other than personal notice, if they go to legislating and require notice. The thing is impracticable." In respect to the provision of the Constitution of Illinois which declared that the right of trial by jury shall remain inviolable, and shall extend to all cases at law, without regard to the amount in controversy, the judge remarked that this had reference only, and is so understood by all jurists, to suits or actions for the recovery of money in actions *ex contractu* or *ex delicto;* that it never had been considered by any court as extending to the process in the exercise of the right of eminent domain, nor to cases of that description ; that highways are laid out by the public over private property ; that streets were laid out and widened in cities, through the instrumentality of commissioners appointed to assess damages, and no question had ever been made of their

legality.　The judge remarked that he did not see any conflict between the section of the Act alleged to be unconstitutional and the 8th section of article 13 of the Constitution of Illinois, which declared that " No freeman shall be imprisoned or disseised of his freehold, liberty or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." He said that this clause does not apply, and has never been made to apply, to cases of the description of the one before him. He said that the right of eminent domain, by which private property may be taken for public use, was an inherent sovereign power, and could be exercised *ad libitum* by making just compensation for the same. He said that the case before him was clearly within section 11 of the State Constitution, which provided, among other things, that no man's property should be taken or applied to public use without the consent of his representatives in the General Assembly, nor without just compensation being made to him ; that it was a proceeding in the exercise of the right of eminent domain by the State, to advance the public necessity and supply a want; and that he had no doubt that the Legislature, in the exercise of this right, could, without notice of any kind, in any emergency of which they are to judge, take any man's property for public use by making compensation, and prescribe the mode in which this compensation should be ascertained.

In the case of *Kramer* v. *Cleveland & P. R. Co.* 5 Ohio St. 140, the court decided that three disinterested freeholders of the county where the property is situated, appointed by a judge of a court of record, was a competent tribunal to make the assessment; and that where notice was actually given, and the owner appeared before the appraisers, the proceedings cannot be invalidated for the reason that the law provided for no such notice. Ranney, *J.*, delivering the opinion of the court, said : " It was certainly important that the adverse party should have notice of the action of the appraisers, in order that he might point out to them such circumstances as were calculated to enhance the value of the property, or the

damages sustained. But, allowing this to have been indispensable, it is averred that he had such notice, and did actually appear before the appraisers. Where this is done, we do not think the omission in the Act to require it can be made use of to invalidate the proceeding. It is no part of the duty of the appraisers to hear evidence or arguments. This has never been required in any of our laws, prior to the adoption of the present Constitution. They proceed upon actual view of the property taken or injured, and from the information thus derived make the appraisal or assessment." He also remarked that it required no judicial condemnation to subject private property to public uses.

*Judge* Cooley did not say, nor mean to say, that in cases like the present the land owner was entitled to notice of the time and place of the assessment of damages to his land. He refers to *People* v. *Tallman*, 36 Barb. 222, and *Boonville* v. *Ormrod*, 26 Miss. 193. The former was decided under the Statute of New York, 1847, which provided for notice to the opposite party. Of course it was necessary to pursue the direction of the statute.

It seems the statute provided for a hearing before a jury, and the jury, without further explanation, in the law, must be understood as one of twelve persons,—a common-law jury. *Lamb* v. *Lane*, 4 Ohio St. 167. There is no such case as *Boonville* v. *Ormrod*, reported in 26 Miss. 193. The case of *Hood* v. *Finch*, 8 Wis. 381, also referred to, did not decide that an assessment of the damages to a landowner will necessarily be invalid if notice is not given him as to the time and place of making it. It simply decides that when city authorities undertake to lay out a street without notice to the owner, they must strictly pursue the statute in relation to the matter, or their acts will be void. This is unquestionably a sound doctrine.

The case of *Dickey* v. *Tennison*, 27 Mo. 373, referred to by the learned author, is not a case in point. The road sought to be laid out, although called a neighborhood road in the Act authorizing it, was in fact a private road. The judge remarked

that the Constitution of that State provided that no private property ought to be taken or applied to public use without just compensation; and that, whilst this provision recognized the right of eminent domain in the State for the public use, there was nothing which sanctioned the doctrine that the property of individuals might be taken for private use with or without compensation; that names do not alter things, and when an Act is unconstitutional in its essence it cannot be made valid by specious names or titles. He said that but for the word "neighborhood" in the Act, it would never have occurred to anyone but that the road was for the private use of the defendant alone.

Nor do I consider the case of *Powers's Appeal*, 29 Mich. 504, the only remaining case referred to by the learned judge, as analogous to the one before me. The questions before the court were complex, but the main general principle decided was one which no one can question; namely, that proceedings whereby private property is taken against the will of the owner for the purpose of opening a street, being special and adverse, must comply strictly with every provision of the law which is not so purely formal as in no way to bear upon the protection or rights of the parties to be affected.

The complainant's counsel also claimed the provisions of the Fourteenth Amendment to the Constitution of the United States as applicable to and as controlling in this case. That amendment provides that no State shall deprive any person of life, liberty or property, without due process of law. The counsel contend that where the State Constitution requires the making of compensation as a condition of the exercise of such right, the above provision of the Fourteenth Amendment clearly applies to the judicial or quasi judicial function involved.

In my opinion that article has no application to the question before the court. The mere reading of the article, and an acquaintance with the history of the times and circumstances under which this amendment was proposed and declared adopted, cannot fail to convince anyone of the correctness of this conclusion.

The history of that amendment is briefly this : Congress. having passed an Act commonly known as the Civil Rights. Bill, which was manifestly unconstitutional, determined, if possible, to secure the objects of the bill by incorporating them into the Constitution, and did incorporate them into this amendment, which they proposed for adoption by such of the States as that body then recognized as States in the Union.

The last prohibition of the Fifth Amendment to the Constitution of the United States was: " Nor shall private property be taken for public use without just compensation." This, in substance, is the same provision on the same subject. as that contained in section 8 of article 1 of the Constitution of this State. The Supreme Court of the United States has. repeatedly declared that this Fifth article of the Amendment to the Federal Constitution had reference only to the powers to be exercised by the Federal Government, and has. no relation to that to be exercised by the States ; and Congress, when it formed the Fourteenth Article of Amendment, did not even profess to extend the restriction contained in the Fifth Amendment upon the taking of private property for public use without compensation, to the action of the. States upon the same subject.

I agree with the counsel of the complainant that, where a court of law has no jurisdiction of the subject matter of a controversy, a party whose rights are sought to be affected by it is at liberty to repudiate its proceedings and refuse to be bound by them. The action of a court under such circumstances would be unconstitutional, and could not bind anybody.

I am, almost reluctantly however, compelled to declare that the Act of the Legislature referred to in these proceedings is not unconstitutional for the reason that it violates any provision of the State Constitution.

The complainant has in fact sustained no injury that he would not have sustained had the Act itself provided, either expressly or impliedly, for notice to him of the time and

place of the meeting of the commissioners for the assessment of his damages. He voluntarily appeared before the judge at the time and place when the commissioners were appointed. He had actual notice of the time and place of their meeting for the purpose of performing their duty. He had, by his counsel and witnesses, a full opportunity to be heard before the commissioners, and was in fact heard in respect to the question of his damages.

I do not think, therefore, that the case presented to me justifies the awarding of a preliminary injunction. At the same time I am free to say that, had I been a member of the General Assembly, I would not have voted for the original charter under which the defendant acts; nor do I think that the Legislature of this State ought in future to pass any Act for the incorporation of a railroad company which shall not provide all reasonable protection and safeguards to the rights, not only of individuals, but of the public at large. The enormous power of these corporations, and the tendency to increase that power, not only by legislation, but by their consolidation and the merger of the less into the larger of them, and in other respects which might be mentioned, are enough to cause apprehension in respect to the future; but I will not trespass upon a domain of thought which more properly belongs to the Legislature than to the judiciary. *Facilis descensus Averni; sed revocare gradum superasque evadere ad auras—hoc opus, hic labor est.*