ROBERT FRAZER,

*vs.*

WILLIAM FRAZER.

*Kent, March T.* 1861.

Ordinarily, the party alleging insanity is bound to prove it. Insanity is not presumed.

But, general insanity being proved, the *onus* is upon the party setting up any act as binding to prove that it was done in a lucid interval.

By insanity is not meant a total deprivation of reason, but only an inability from defect of perception, memory and judgment, to do the act in question.

By a lucid interval is not meant a perfect restoration to reason, but a restoration so far as to be able, beyond doubt, to comprehend and to do the act with such perception, memory and judgment as to make it a legal act.

The reasonableness of an act is evidence of the rationality of the actor. The fixedness of purpose to do it, is further evidence of stability, and, therefore, of rationality: but if the act is not shewn to be reasonable it derives no strength from a continued purpose to do it.

BILL TO SET ASIDE A CONVEYANCE.—This bill was filed to set aside a deed executed by James Frazer and wife, on the 5th of October, 1854, conveying to the defendant, who was one of his sons, a farm in Kent County, being the farm on which James Frazer had resided, for the consideration, as specified in the deed, of $2,000. The bill alleged that James Frazer, the grantor, had been insane since the year 1830; that from 1837 until 1842 he was an inmate of the Insane Asylum at Philadelphia; that he was brought home without any material improvement in his mental condition, and from 1842 to 1853 he was at times confined

in the Alms House of Kent County, and from that year until his death in 1859, he was generally in the Alms House; that he had been out of the Alms House only two weeks before the execution of the deed on the 5th of October, 1854; that on the night of that day he had a violent attack of mania, which made it necessary to remove him back to the Alms House; and that, on the 5th of October, 1854, he was legally incompetent to convey his property or to transact any business. The bill alleged that the defendant gave his bond for $1700 as the purchase money, but had never, in fact, paid anything; that the consideration specified in the deed ($2,000) was grossly inadequate, the farm being worth $4,000; and that the defendant, on the execution of the deed took and still held possession of the farm. The bill charged that the deed was fraudulent and void, and that the title to the premises had, upon the death of James Frazer, intestate, descended to his heirs at law, of whom the complainant was one and entitled to one-third; that although James Frazer had left a will, he had died intestate as to this real estate.

The defence relied upon by the answer was that James Frazer, although a lunatic, had lucid intervals, during which he was capable of transacting business, and that the conveyance in question was made in one of these intervals. The answer alleged that it was made upon James Frazer's own proposal to sell the farm to the defendant for $2,000, reserving to his wife, the defendant's mother, the use of certain parts of the dwelling house after his death; that the defendant, together with his mother, was then living with his father and carrying on the farm for the maintenance of the family; that the consideration was reduced from $2,000 to $1,700, after the deed was prepared, at the instance of James Frazer, for the reason, assigned by him to the conveyancer, that the farm would not rent for more than $100. The defendant admitted that he had not paid

any part of the bond for the purchase money, but alleged that the same had been disposed of by James Frazer's will, and that he stood bound for it. The answer wholly denied the alleged inadequacy of the purchase money.

A large body of testimony was taken, on both sides, to shew the mental condition of James Frazer; also proving various estimates of the value of the farm. The conveyancer, Samuel B. Cooper, who, on the 5th of October, 1854, prepared the deed, and also James Frazer's will, and superintended their execution, testified that, in his judgment, Frazer was on that day rational and capable of understanding the business transacted; that Frazer had previously requested the conveyancer's attendance and explained his reasons for the proposed disposal of his property. The material parts of the testimony are referred to in the Chancellor's opinion.

The cause came before the Chancellor, at the March Term, 1861, for a hearing upon the bill, answer, exhibits and depositions.

*E. Ridgely* and *N. B. Smithers*, for the complainant.

*G. P. Fisher* and *J. P. Comegys*, for the defendant.

HARRINGTON, CHANCELLOR.—At the hearing of this case, before argument, being satisfied that it was a case proper for trial by a jury, I offered an issue to either party who might desire it, which, after consultation, was declined by both sides. I did so neither from a sense of difficulty in the case, nor of delicacy in deciding it, but of duty with reference to a case involving a mere question of fact, on which question I shall now express an opinion.

No material difference was apparent in the argument, as to any question of law bearing on this question of fact, though there was some slight discrepancy in the mode of

stating the principles of law and in the authorities cited. But this whole matter has heretofore been so fully considered in our Courts, and my own opinion so fully expressed in the case of *Duffield vs. Morris' Ex'r.*, 2 *Harring. R.* 375, that, without controverting the points of that decision, they may be said to rule this case.

Insanity is not presumed. Ordinarily, the proof of it rests on the party alleging it. This *onus* changes when the condition of the subject is changed, and the party is proved to have been insane. Then, the party setting up any act as binding must show that it was done in a lucid interval.

By insanity is not meant a total deprivation of reason, but only an inability, from defect of perception, memory and judgment, to do the act in question. So, by a lucid interval is not meant a perfect restoration to reason, but a restoration so far as to be able, beyond doubt, to comprehend and to do the act with such reason, memory and judgment as to make it a legal act. The defendant has to establish that in this case.

James Frazer was an insane person, at intervals, from the year 1830. He was generally insane, with intervals either of calmness or restoration, from that time till the beginning of 1854. He was insane, with intermissions but without restoration, after 1854 till his death in January, 1859. He was often raving; often in lunatic asylums; generally, from 1851, in the Alms House, and constantly there from about the time of this transaction, though at that time for a few weeks he was out of the Alms House.

From the current of testimony, he was incapable of doing any business for many years before his death, and did not do any business with the single exception of the act in question and two others—the execution of a will and the making of an affidavit. The officer who took the

affidavit did not observe any want of mental capacity, and the witnesses to the will and to the deed now in question make the usual proof of capacity. But the fact of general insanity was not known to the former, and the judgment of the latter is now to be tested.

On the 5th of October, 1854, James Frazer—who, for many years, had been in the general condition of an insane person, usually confined to the Alms House, but sometimes supposed to go out during intervals of calmness or lucidity, in one of those intervals executed this deed, under circumstances that impressed the draftsman and witnesses with the idea of entire competency to do the act with a proper mind. He gave the instructions, gave reasons which, if true, were good reasons for making an unequal division of his property, estimated values, stated his previous purpose to do the act, which is proved by Mr. Cooper, and behaved as a man doing a rational thing in a sensible way. Opposed to this is evidence of the previously existing and immediately following state of insanity, the want of proof *aliunde* of the reason he gave for advancing his son William, and the conflict of testimony in regard to his conduct and condition on the day and night of the execution of the deed.

The reasonableness of an act is evidence of the rationality of the actor. The fixedness of purpose to do it is further evidence of stability and, therefore, of rationality ; but if the act is not shown to be reasonable it derives no strength from a continued purpose to do it. James Frazer's repeated offers to convey his land to Joseph Nickerson, though proving a fixed purpose, did not prove rationality, any more than the reason he gave for it which was not a true reason. The assigned reason for making this deed was to equalize the distribution of his property, because of advances before made to his son Robert, of which there is no proof other than his own statement, and

this reason is not consistent with the other, stated by him and now maintained by the defendant, that the farm was sold at its real value. Beyond a doubt, this is not so. The farm was worth $3500. Its rental value was $175 or $200. He estimated it at a rental of $100, and conveyed it for $1700, either because that was the worth of it or because he had before advanced the other children. The first reason is not true, the second is not proved. All the witnesses, including one for the defendant, put the value at what I have stated, the exceptions being only the other two witnesses to the deed, one of whom does not know with any accuracy the size of the fields nor what they will produce, which weakens materially, in my mind, the force of their judgment on the main question. I would not impeach the honesty of either of these witnesses, and I have great respect generally for the judgment of Samuel B. Cooper; but when he deposes that there was nothing about this transaction to excite even a suspicion of James Frazer's competency, whom he knew to be generally insane and just out of a mad house, his judgment reducing the value of the land at least one-half, when such reduction is necessary to prevent such suspicion, loses much of its weight.

This deed will have to find support, therefore, from extrinsic circumstances, as there is nothing in the transaction itself so much in accordance with reason and propriety as to induce the conclusion that it was the act of a man of competent capacity.

And, considering where the burden of this proof lies, I have no hesitation in saying that the deed is not supported by extrinsic evidence. On the contrary, the evidence of long continued and often violent insanity in the grantor, of his general incapacity to do any business, of the fact that he did not do any thing requiring the use of judgment for a long time prior to the execution of this deed,

34

and that he was regarded by his family as so incapable ; considering also the evidence of others than the attesting witnesses as to his condition on the day of the execution of the deed, the same night, the next day and even after, I do not think that the deed was the act of a person capable of executing a valid legal instrument. I refer especially, on one of these points, to the condition of James Frazer immediately before, on and after the day the deed bears date, and his conduct at the time of its 'execution, to the deposition of Rachel C. Killen, and finally, and conclusively to my mind, to the testimony of Doctor Cowgill and the other medical gentlemen who treated his disease, and of Thomas Purnell who for a long time kept him, all of whom considered him insane.

Let a decree be entered declaring the deed void.