Del.]                CUMMINS, *et al.* vs. CUMMINS, *et al.*                423

Syllabus.

*Verdict for plaintiff for $76.53.*

EVELINE CUMMINS *et al.*, Appellants, *vs.* ALEXANDER G. CUMMINS *et al.*, Respondents.

Kent County, April Term, 1895.

**Jurisdiction. Probate of Wills.**—The Superior Court has no original jurisdiction of the probate of wills; its authority is appellate only, to affirm or reverse set the decision in whole or in part as it may be meet.

**Same.**—The appellate court does not try the case *do novo* or upon new evidence, but upon the record and evidence as sent up, which evidence, under the constitutional provision, is taken at large in writing and makes a part of the proceeding.

**Probate of Wills. Issue.**—The granting of an issue of *devisavit vel non* by the Register of Wills is a matter within his discretion and the heir at law cannot claim it as a matter of right.

**Same.**—On appeal the Court has power to direct an issue, as a verdict would not be binding upon it, the object being only to inform the conscience of the Court; but in such case the jury in trying the case would be confined to the evidence sent up by the Register. Hence, if the Court consider that the Register ought to have granted an issue, the regular proceeding is to reverse the decision and

remand the case, with a view of having an issue directed, in which case all pertinent evidence would be heard whether theretofore taken before the Register or not.

This was an appeal from the Register of Wills of Kent County, admitting to probate the will of George W. Cummins, deceased.

The will bears date December 28, 1888. It was signed by the testator, witnessed by W. H. Janney, John E. Collins and William Faries, with a codicil dated May 28th, 1889, signed by the testator and witnessed by O. B. Voshell, Samuel J. Reynolds and Charles J. Allen. The will was proved before Register James L. Heverin, February 3rd, 1891, and the allowance of the will and granting of letters was affirmed by Register Ezekiel T. Cooper, October 12th, 1891, upon proceedings in review.

The appeal rests on two grounds, viz.:

*First,* That the Register erred in admitting the will to probate, for the reason that the testator at the time of executing the same was not of sound and disposing mind and memory, and also that he was unduly influenced.

*Second,* That the Register erred in refusing to grant an issue of *devisavit vel non,* to be tried by a jury of this Court upon the prayer of the appellants, who are heirs-at-law of the testator.

The appellants relied mainly upon the second ground ; that is, the right of heirs-at-law to an issue to be tried by a jury. They contended that such right subsisted whenever the testimony disclosed any material conflict, and that in every such case the existence of the right created a corresponding duty on the part of the Resister to grant such an issue; that the Register having failed to do so, it was the duty of this Court to make such order.

*Edward G. Bradford,* for the appellants, read the petition for an issue which he said was presented to the Register immediately after hearing the evidence and before his decision. He contended substantially as follows :

*First.* We apply for an issue of *devisavit vel non* to be ordered by this Court, and, as we think, to be framed by this Court, though it is not a matter of practical concern whether such an issue be framed by the Court which has the record before it or by the Register under the direction of the Court. The application is, however, for an issue to be ordered by the Court. The evidence shows great contrariety of opinion as to the testamentary capacity of the testator. This is sufficient. There is no necessity of going into the question of preponderance so long as there is conflicting testimony on that point. The Register, notwithstanding this conflicting evidence, refused to grant an issue. We claim the right to have the question submitted to a jury; Forsythe, Jur. Tr. 382; Duke of York's Laws 100; 1 Del. Laws, Appx. 79; Rev. Code (1874) 539.

The constitution of Delaware, Art. 6, § 22, provides for an appeal to this Court, whose decision shall be final. The question is, how shall the court act on the appeal? The constitution is silent as to procedure. The appeal, however, is not to the Orphans' Court or to the Chancellor, or even to the Court of Errors and Appeals, but to the Superior Court, which has a jury, and in which questions of law are passed upon by the Court and questions of fact by a jury. Should the Court depart from this its usual practice or apply it to this case?

The constitution of Delaware, Art. 6, § 10, provides for an appeal in certain cases from the Orphans' Court to the Superior Court, and expressly gives to the latter all the powers of the former. In those cases, therefore, the Superior Court can proceed in either way to act upon an appeal according to its own practice of submitting questions of fact to the decision of a jury or to determine such questions directly. In the case of the Register the constitution simply provides for an appeal without regulating or prescribing the manner of determining it. There being no authority for any other method of trial, it should naturally be in accordance with the customary practice of the court. A controversy as to matter of fact is to be determined in " due course of law;"

*United States vs. Goodwin*, 7 Cra. 110. The object of an appeal is to subject the law and the facts to a review and a retrial; *Davis vs. Rogers*, 1 Houst. 183. To quote the language of the late Chancellor Bates in the argument of that case: "An appeal has the effect to remove the case, with all its rights and incidents, to the Court above, and it is there to be regarded and prosecuted in all respects as if the case had been instituted originally in the Appellate Court."

Whether the issue is to be framed by this Court or by the Register of Wills under the direction of this Court is immaterial to us, and our Courts seem to have different views on this question.

As the appeal removes the question of the validity of the will and provides that the decision shall be final, the question presents itself, as to what it is final. The appeal was taken from the decree of the Register establishing the will and from his refusal to grant an issue. If it were only as to the latter, the Court cannot direct an issue to be framed; but it is also from the decision which establishes the will, and under the constitution the decision of the Court upon that question is final. We have appealed from the finding of the Register as to whether the paper writing was the last will and testament. How shall this be decided? Manifestly, by the usual course—by due course of law. It is the right of every citizen to have questions of fact decided by a jury. Article 1, § 9, of the Constitution, provides that "all Courts shall be open, and every man for an injury done him in his reputation, person, movable or immovable possessions, shall have remedy by the due course of law, etc." As to what constitutes due course of law, Saulsbury, Ch., says: "By the words 'due course of law' and 'the law of the land,' in Section 9 * * * * I understand summons or notice, appearance of parties, pleadings to issue of fact or law, trial by jury of fact, and judgment of a competent court upon verdict rendered upon facts, or judgment of the Court upon issues of law—in both cases the proceedings to be according to the usual practice of said Courts." *Wilson vs. B. & P. R. R. Co.*, 5 Del. Ch. 531, 539.

LORE, C. J.   How do you distinguish between an appeal from the Register and an appeal from the Chancellor, upon the hearing of which there is no right to have questions of fact decided by a jury?

*Bradford*, for the appellants, (resuming.)   The Chancellor's Court is as much within the contemplation of the constitutional provision cited, as a court of law, and the Chancellor is the judge of law and fact under the constitution, hence it is that an appeal from him is taken to the Court of Errors and Appeals, which is a court without a jury; but an appeal from the Register is taken to the Superior Court, which is a court of law.

*Second.* We contend that this application for a jury trial, being made by heirs, in a case in which the will passes title to real estate under the decisions generally, as well as under the Constitution of this State we are entitled to a jury.   From time immemorial it has been the right of the heir to have a trial by jury; 1 Del. Laws App'x. 89; Del. Const. of 1776, Art. 25.   The Constitution of 1792, Art. 4, § 4, provides that "trial by jury shall be as heretofore."   The same provision is found in the Constitution of 1831, Art. 1, § 4.

In England a will, though good at law, might be set aside in equity by the heir-at-law for fraud; *Goss vs. Tracey*, 1 P. Wms. 287.   In a suit for establishing a will the heir-at-law, is by the long-established practice of the Court, entitled to an issue *devisavit vel non.*   2 Sto. Eq. Jur. § 1447, note.   Formerly in England there was no Probate Court having jurisdiction where real estate was concerned.   Wills of personalty were cognizable in the Ecclesiastical Courts and there only was jurisdiction to set aside a will of personal property merely.   A will of real estate alone could not be probated in the Spiritual Court, but under the act 20 & 21 Vict. (1857), where real and personal property was involved, the will could be probated in the Ecclesiastical Court, but without prejudice to the real estate or any one interested in it.   Where a will of real estate was disputed the devisee filed his bill in a Court of Chancery

to establish the will. And the Court never set it aside without first allowing the question of will or no will to be tried by a jury. If the heir was in possession, ejectment would lie. Where a devisee filed a bill to quiet title the heir was entitled to have submitted to a jury the question of will or no will. It was recognized as a rule of law that the heir should not be disinherited without a trial by jury, The heir is a favored person and cannot be disinherited without express language or necessary implication; *Dawson vs. Choter,* 9 Mod. 90; *Bennett vs. Glade,* 2 Atk. 324; *Fitten vs. Machelsfield,* 1 Vernon 287; *Webb vs. Claverden,* 2 Atk. 424; *Anonymous,* 3 *id.* 17; *Cleeve vs. Gascoine,* Ambler 323, 324; *Kerrich vs. Bransby,* 7 Bro. Par. Cas. 437 ; *Levy vs. Levy,* 3 Madd. Ch. 245; 2 Smith, Ch. Pr. 74, 75; *Pemberton vs. Pemberton,* 11 Ves. Jr. 50.

The main question is whether or not this paper writing which has been allowed as the last will and testament of the testator shall be set aside, and the court cannot properly set it aside without sending an issue; 2 Sto. Eq. Jur., §§ 1445, 1447; *Van Alst vs. Hunter,* 5 Johns. Ch. 148 ; *Rogers vs. Rogers,* 3 Wend. 503, 515; *Boothe vs. Blundell,* 19 Ves. Jr., 495, 500 ; *Williams vs. Williams,* 2 Yeates 167 ; *Burkett vs. Randal,* 3 Merivale 465; *Frazer vs. Frazer,* 2 Del. Ch. 260.

The Register in this State has been substituted in place of the Chancellor in England so far as real estate is concerned in the probate of wills; *Rash vs. Purnell,* 2 Harring. 448, where Clayton, C. J., says the effect of a probate in Chancery in England is similar to that of a probate here before the Register. Power is given by statute to the Register to grant an issue; 7 Del. Laws 466; but this was the first express statutory authority in this State, and if the Register ordered issues before the passage of this act it must have been in the exercise of the authority exercised by the Chancellor in England as suggested by Clayton, C. J. Such issues were granted before the passage of the act; *Chandler vs. Ferris,* 1 Harring. 454, and as suggestive upon this point reference may be made to 1 Del. Laws, Appx. 52, where it is provided that all wills in

writing where any lands are devised shall be good as any other conveyance,   *   *   *   provided the same be legally proved within this Government or in the Chancery of England. And again any will in writing whereby land is devised shall be effectual when proved in the Chancery in England or in any Colony; *id.* 449.

It remains to consider how far this view is affected by our own decisions, among which we may refer to *Rash vs. Purnell,* 2 Harring. 448; *Barker vs. Spicer,* 4 *id.* 348; *Hall vs. Dougherty,* 5 Houst. 435; *Etheridge vs. Bennett,* 9 Houst. 295.   In *Barker vs. Spicer* there was no application for an issue of *devisavit vel non* before the Register, and Wootten and Houston, JJ., constituted a majority in this case, but afterwards decided the case of *Hall vs. Dougherty* directly contrary to their argument in their former case. The *Bennett* case was a contest between devisees under two wills and not by an heir.

A third person does not have a right to demand an issue where there is a permissive power merely; this imposes as to him no duty; but where there is a right on the part of the heir he can call upon the Register and demand an issue, though the power is merely permissive; Suth. Stat. Construction, §§ 460–462.

*James Pennewill,* for the appellees: " Due process of law does not necessarily involve trial by jury. It simply requires notice and an opportunity to be heard;" *ex parte* Wall, 107 U. S. 289; 5 Del. Ch. 524.

In this State the right of the heir-at-law is not invested with the same importance as in England? There many considerations were involved which are not necessary to be considered here. The right to make a will is as strong as the right to inherit, and the right of purchase equally so with the right of descent. In England there was no Probate Court where the will merely pertained to real estate, but the Ecclesiastical Court was the Probate Court for personal property.   Here has been added the power to probate a will pertaining to real estate.

If the verdict is to enlighten the conscience of the Register it is not binding upon him.

A will of real estate in England was treated as a conveyance, as a deed. Such an issue was a trial of title, not merely proving the will. The provision establishing the Register's Court expressly confers on him a discretionary power with respect to granting an issue. The appeal from the decision of the Register is strictly an appeal to be determined as such. Therein it differs, for example, from an appeal from a Justice of the Peace where it is provided that the proceeding shall be *de novo*. If an issue were granted the judgment must still be that of the court. The verdict of the jury would be simply for the enlightenment of the court, and the power of the Register to grant an issue is purely discretionary, and therefore should not be the subject of review; *Barker vs. Spicer*, 4 Houst. 348; *Hall vs. Dougherty*, 5 id. 435; Combs's Appeal, 105 Pa. 162; Knauss' Appeal, 114 Pa. 10; *Pilling vs. Pilling*, 45 Barb. 87; *Jamison vs. Jamison*, 3 Houst. 108.

*George Gray*, on the same side. The probate of wills in England under the old system extended down to a late day and had its effect upon the decisions. The whole law of real estate was founded upon the tenure of the middle ages—the feudal system. The importance of the heir at law continued long after the institutions upon which it was founded had passed away. Also, at that time real estate was almost the only form of wealth. Down to our time there was no probate of a will of real estate in England, it was merely a deed. In 2 Sto. Eq. Jur. §§ 1445–8, it is said that the probate of wills extends to other jurisdictions than chancery, but this is only when a will comes before them as an incident to the cause they will consider it. There was no registry and a will was kept in a strong box as a deed, but here there is established a registry and the Constitution of 1792 recognized both a registry and a Register's Court and the right of appeal from it. In the Constitution of 1832 the Register's Court is also recognized and judicial power vested in it. It provides that depositions shall be taken in writing and be a part of the

record and that he may issue process.  It is no narrow jurisdiction and an appeal is given to the Superior Court the decision of which shall be final.  Thus the Register is made a part of the judiciary system of the State.

Though the jurisdiction is limited it is broad enough to consider every question as to the validity of a will.  To ascertain the jurisdiction of a Court thus constituted it is not necessary to go to the courts of England.  The Legislature has provided for making it effective and certain.  The one question is, whether the power to grant an issue is mandatory or discretionary?  the law says, shall have the power.  It is argued that this means, it shall be his duty, but such a construction can only be reached outside of the Constitution and the law.  The effort is to set up an inherent right of the heir at law and to establish this the history and decisions of England are relied upon to nullify our Constitution and laws.

The English cases cited present a condition from which it was the object of our Constitution and law to relieve us.  They spring from privileged conditions and the rights claimed for the heir at law there grew out of the feudal system.  In this country it is not held that the Register of Wills is bound in every case to grant an issue; he is empowered, but not required to do so.  It is for him to exercise a legal discretion whether he will do so ; *Wykoff's App.* 15 Pa. 288 ; *Knauss' App.* 114 *id.* 10; *Cozzen's Will,* 61 Pa. 196.

The test is would the Court be content with a verdict which would overthrow this will; 114 Pa. 10; 114 U. S. 618.  The appeal is to this Court—to its judgment both before and after a verdict of a jury.  The will is here as a part of the record as are also the circumstances out of which it grew.

As to the rule governing testamentary capacity in this State we may refer to *Jamison* vs. *Jamison,* 3 Houst. 123 ; *Sutton* vs. *Sutton,* 5 Harring. 459 ; *Duffield* vs. *Morris' Executors,* 2 *id.* 375 ; *Lodge* vs. *Lodge,* 2 Houst. 423; *Hall* vs. *Dougherty,* 5 *id.* 435 ; *Chandler* vs. *Ferris,* 1 Harring. 464.

*Edward Ridgely,* for the appellants, replied.  Our request is

that as to this question, which is one of fact proper for the decision of a jury, the Court send an issue to a jury and permit their verdict to control the judgment. The question of sanity can only be properly tried by a jury, because it is exclusively a matter of fact. In this State the probate of wills was originally in open court (about 1680). Prior to 1682, under the Duke of York's laws, the wills were proved at the assizes, and when proved, the originals were sent to New York. After the grant to William Penn in 1682 he established a code of laws, and then there were Registers appointed. The Register General resided in Philadelphia, and the wills were recorded by his deputies in the several counties, the first appointment being in 1690.

Under the statutes of 1706 and 1769, already cited, when a will was duly proved it passed a good title to land whether it was proved in this country or in Chancery in England. In England prior to the statute 20 & 21 Vict. there was no Court of Probate as to real estate. There had been for years jurisdiction in Chancery to establish wills, as shown by cases cited. In every case if the heir-at-law was in possession there was a right to file a bill in Chancery to establish a will and the Chancellor had jurisdiction. Such will was never established without a trial at law, and when so established it was conclusive. If the heir was out of possession he must bring his action in ejectment.

In *Rash vs. Purnell*, 2 Harring. 448, Clayton, C. J., says: "The proceeding (an issue granted by the Register) is analogous to that issue and trial which in England are usually ordered by the Court of Chancery when a bill is filed in that court by a devisee to establish a will."

In case of appeal from the Orphans' Court the Superior Court has all the powers of the Orphans' Court, among which are the decision of questions of fact. Herein lies the difference between such cases and appeals from the Register.

LORE, C. J.: Section 22, of Article VI, of the Constitution provides as follows: " The Registers of the several counties shall,

respectively, hold the Register's Court in each county. Upon the litigation of a cause the depositions of the witnesses examined shall be taken at large in writing, and make a part of the proceedings in the case. Appeals may be made from the Register's Court to the Superior Court, whose decisions shall be final."

By the terms of the Act of February 16th, 1829, Rev. Code Chap. 89, § 4, it is provided : " That the Register shall have power to order any issue of fact whereof he may prescribe the form, touching an instrument, purporting to be a will, to be tried by a jury in the Superior Court."

Chief Justice John M. Clayton in announcing the opinion of the Court in *Rash vs. Purnell,* 2 Harring. 451, uses this language : " The Register is a Judge, and the sentence of his Court is the judgment of a tribunal of exclusive and peculiar jurisdiction on the subject matter before him ; " that the object of an issue, " is to inform the conscience of the Register ; " that it is in his power to " pay no respect to the verdict of a jury, in case it should not commend itself to his judgment."

The language of the Court in the case of *Barker vs. Spicer,* 4 Harring. 349, decided in 1846, is still more emphatic. The Court there say : " The probate of wills is, in the first instance, with the Register ; and if he thinks proper, he may, in his discretion, direct an issue to try any fact by a jury."

The Act of February 16th, 1829, which first clothed the Register with statutory power to direct an issue of fact, merely expressed the practice which existed prior to that time. This is shown by the case of *Cubbage vs. Cubbage,* decided in 1818, and that of *Bell vs. Buckmaster,* decided in 1820, cited in *Chandler vs. Ferris,* 1 Harring. 454, note. This act was doubtless passed to set at rest any question as to the validity of such procedure.

It was contended by the appellants with much force that as the power to direct an issue was exercised by the Register prior to the statute of 1829, it must have arisen by analogy to the practice in the Courts of Chancery in England, upon bills filed to establish wills, where upon the demand of an heir-at-law an issue

was uniformly granted; that this practice was adopted by our courts
as a part of the then existing law; that this uniform rule in the
Court of Chancery, attached to and controlled the granting of an
issue under our procedure.

It nowhere appears in the cases prior to 1829 from whence
this power came, or that it was a matter of right in the heir-at-law
to have an issue. The act which embodies the practice says: " The
Register shall have powder to order any issue of fact;" that is to
say, he *may* order it. The statute is not mandatory in terms, as it
most probably would have been if the right existed absolutely in
the heir-at-law to demand it. The Court in *Barker vs. Spicer* in-
terpreted this statute when it said: " The Register, if he thinks
proper, may, in his discretion, direct an issue."

From the foregoing citations, it must be manifest that the
granting of an issue by the Register is discretionary. It is true
that the Court say in *Barker vs. Spicer*, " In general a will ought
not to be established against an heir-at-law without an issue when
he prays one at the proper time." This implies, however, that it
may be so established.

We find no law, no well considered case, controlling the dis-
cretion of the Register in granting or refusing an issue, subject only
to the decision of this Court upon an appeal. It may be said in
passing that the case of *Hall vs. Dougherty*, 5 Houst. 435, some-
what relied upon by the appellants, was declared by the learned
judge who decided it, to be " a novel and unprecedented case," and
evidently was so treated by the Court. This case is not in harmony
with the older or with the more recent adjudicated cases, and was
distinctly overruled by the same learned judge in the *Bennett* will
case in 1891.

The Register, therefore, being a judge of peculiar and exclusive
jurisdiction, with the right to send an issue to inform his conscience
if he thinks proper, with the right also to disregard the verdict of
a jury upon such issue, it follows that it was in his discretion to
direct an issue or not. It would be absurd to hold that he must

Del.]          CUMMINS, *et al.* vs. CUMMINS, *et al.*          435

Opinion of Lore, C. J.

send an issue, when he has the right to disregard the verdict of a jury upon such issue.

In the exercise of that clear right, the Register having refused to grant an issue, is it now in this appeal the duty of the Court to direct such issue, and if so in what manner?

This Court has no original jurisdiction in the probate of wills. Its authority is appellate only. Its function is to affirm or to reverse the decision of the Court below, in whole or in part, as it may deem meet. It does not try the case *de novo* or upon new evidence, but upon the record and evidence as sent up, which evidence under the constitutional provision is taken at large in writing and makes a part of the proceeding. Therefore, in an appeal from the Register as to the validity of a will, if the Court is satisfied from the evidence as sent up by the Register that his decision is correct, it may without the intervention of a jury affirm the same. If, on the other hand, it is satisfied from such testimony that his decision is wrong it may set it aside and remand the case to the Register for correction.

The Court expressly say in *Barker vs. Spicer:* "The practice under the amended Constitution (1831), as well as under the Constitution of 1792, which are the same in this respect, has uniformly been to try appeals from the Register in probate cases by the Court. We have examined the records for more than thirty years back, and find no case of trial in the Appellate Court otherwise, and this is in conformity with the course of trials in all other appeals, except that in appeals from judgments of Justices of the Peace, which are provided for by act of Assembly, the cause is tried on appeal on the same evidence as was heard in the case below."

It would none the less be a trial by the Court, even should the Court, through an issue, ask the verdict of a jury as to any question of fact, as in deciding the case the verdict would in no wise be binding, and the court could accept or reject the conclusion of the jury, as it deemed best, the verdict of the jury being only to inform the conscience of the court and to aid it in determining the

questions submitted on appeal, and which either with or without an issue are being tried by the court.

If upon examination of the record this Court should conclude that the Register ought to have granted an issue, the regular procedure would be to reverse the decision of the Register, and remand the case to him with a view to have an issue directed. This would preserve the continuity of the record in the Register's office, where the law evidently intended it should be complete as to the probate of wills, and is also in conformity with the ruling in *Barker vs. Spicer* in 1846 and the *Bennett* will case in 1891. We do not say that this Court has the inherent right to send an issue directly to a jury to inform its conscience to any matter of fact in a case before it, but such a course would seem to be irregular and embarrassed by restrictions in appeals from the Registrar. Should the court order an issue directly, the jury in trying the case would be confined to the evidence taken before the Register and sent up with the appeal, and could not go outside of it while upon the trial of an issue sent by the Register of his own motion, or at the suggestion of the Court after a reversal of his decision, the jury might hear all pertinent evidence, whether it had been taken before the Register or not, and thus a just determination of the questions raised would be more certain.

The principal question remains: Ought the Court to overrule the Register and direct an issue in this case either directly or indirectly. True there is some conflict of testimony. Careful examination, however, of the evidence sent up has satisfied the Court that at the time of the execution of the will and codicil in question the testator, George W. Cummings, was of sound and disposing mind and memory, and that he was not subject to undue influence.

Our judgment is, therefore, that an issue should not be sent to the jury.

This is conclusive, unless the right of an heir-at-law to an issue by the Register in the first instance and by this Court upon appeal is paramount. This point has already been somewhat considered with reference to the duties of the Register.

Opinion of Lore, C. J.

It may be further said that under the English statutes and practice the right of the heir-at-law was coupled with that of the rector of the parish, and evidently grew out of the feudal system and the rule of primogeniture on the one hand and the maintenance of the established Church on the other. To keep the inheritance intact for the heir-at-law and to maintain the established Church were the ends aimed at. These reasons do not now and never have existed in this country. Our laws are framed to facilitate the transfer of property. We have no State Church.

In the mutations of wealth, property which formerly consisted chiefly of realty, now consists largely of personalty. In reason there would seem to be no more sacredness attaching to the rights and remedies of an heir-at-law of real estate than to those of a distributee of personal property.

The appellants urged that the Constitution contemplated a jury trial, when it provided that an issue should be directed to the Superior Court, which was a court of common law jurisdiction and had a jury; that when the issue was in that court it must be tried by due course of law, claiming that due course of law meant the trial of the law by the court and of the facts by the jury. This is by no means clear. The Register of his own motion had a right to send an issue, to be tried by a jury in this Court; it would therefore only be reasonable that an appeal, which might involve an issue, should be taken to the same court and thus preserve the unity of jurisdiction and avoid confusion.

Again, it does not follow that a trial of questions of fact by "due course of law" necessarily involves a trial by jury. Under our system of jurisprudence, questions of fact of the gravest moment, and embracing the largest interests, are heard and determined without a jury. We need not cite instances; they are numerous and must be familiar to every lawyer. Besides, in appeals from the Register, our courts have quite uniformly decided both the law and fact without reference to a jury.

This case, however, does not depend upon the practice and

proceedings in England; but upon the Constitution and statutes of this State and the decisions and practice thereunder.

Under these, in contested cases, the Register of Wills hears all the evidence, takes the same at large in writing, and primarily determines all questions at issue. His decision is final, unless an appeal is taken. Such an appeal lies to this Court, where the case is again heard and finally determined. The right of jury trial is preserved; dependent, however, upon the discretion of the Register and of this Court, instead of the heir-at-law as in England. Both real and personal estates are administered by this simple and harmonious method.

In our judgment this was the intention of the framers of our law, who unquestionably were familiar with the English system. They intended to and have given us a distinct and wise statutory substitute for that complex system, carefully guarding, it would seem, all rights and interests.

Upon the most careful consideration we see no just reason for overruling the action of the Register. The judgment of the Court therefore is that the decree of the Register be affirmed.

GRUBB, J. This cause is here on appeal from the Register's Court for this county in the matter of the probate of the alleged last will and testament and codicil thereto of George W. Cummins, deceased.

The appellants are the widow and three of the four children and heirs-at-law of the deceased. Two causes of appeal were presented by the record and urged at the argument: First, that the Register erred in refusing the application of the appellants for an issue of *devisavit vel non* to by tried be a jury of this court; second, that the Register's Court erred in admitting said will and codicil to probate for the reason that the testator when he executed the same

Del.]  CUMMINS, *et al.* vs. CUMMINS, *et al.*  439

Opinion of Grubb, J.

was not of sound and disposing mind and memory, and moreover was subject to undue influence.

The first ground, although clearly presented was treated as of minor importance in the cause. The main contention was upon the second ground relating to the definitive decree of the Register's Court admitting the will to probate, and arose upon the motion of the appellants that this court on this appeal do frame and direct an issue of *devisavit vel non* to be tried by a jury at bar.

In support of this motion the learned counsel for the appellants contended, first, that as heirs-at-law the appellants were absolutely entitled as of right to have such issue and trial on demand; second, that at the least they were so entitled thereto if, in the judgment of the Court, there was a contrariety of evidence in the case.

These questions were argued on both sides with ability and research and because of the unsettled state of the law under our prior adjudications, this case has merited and received the most careful consideration of the Court.

The decision of these questions raises two principal inquiries :

*First.* Has the Superior Court on appeal from the final decree of the Register's Court allowing or disallowing the probate of a will of realty, the power to frame and try by its jury an issue of *devisavit vel non ?*

*Second.* If so, is the heir-at-law entitled as of right to have such issue so framed and tried on demand ?

These inquiries require the consideration of the origin, constitution and design of our probate system composed of the Register's Court, as the court of first instance, and the Superior Court on appeal therefrom.

This system originated in our Constitution of 1792. The identical language of that Constitution was incorporated in our present Constitution of 1831, unaltered except as to the substitution of our present Superior Court on the appeal for the prior Supreme Court whose jurisdiction and powers were merged in the former. It is found in § 22, Art. 6, of the Constitution, as follows :

" The Registers of the several counties shall respectively hold the Register's Court in each county. Upon the litigation of a cause, the depositions of the witnesses examined shall be taken at large in writing and make part of the proceedings in the cause. This Court may issue process throughout the State, to compel the attendance of witnesses. Appeals may be made from a Register's Court to the Superior Court, whose decisions shall be final. In cases where a Register is interested in questions concerning the probate of wills; the granting letters of administration, or executors', administrators' or guardians' accounts, the cognizance thereof shall belong to the Orphans' Court, with an appeal to the Superior Court, whose decision shall be final."

By these provisions it is manifest that exclusive original jurisdiction of the probate of wills of both realty and personalty, except where the Register is interested, was vested in the Register's Court, and, on appeal, complete, exclusive, and conclusive jurisdiction in the former Supreme and present Superior Court. Their obvious intent is that the decision of the Register's Court shall be conclusive if unappealed from, as our courts have uniformly held, but that the heir-at-law, or other interested contestant shall, on appeal, have the right to a re-trial before a court of higher grade and authority.

The constitutional mandate that the decisions of the Superior Court, on appeal, shall be final, imports not only that its jurisdiction shall exclude that of the Court of Errors and Appeals in respect to the probate of wills, but also the jurisdiction of the Register's Court after the appeal has been received above. Accordingly, upon the appeal, the cause is removed from the Register's Court *in toto* to the Superior Court there to be tried *de novo*. Thereafter the validity or invalidity of the will in controversy is determined by the latter and not by the former.

The constitutional grant of exclusive and conclusive jurisdiction of the probate of wills to the Superior Court on appeal, also necessarily confers plenary power over the subject thereof, and, by implication, all the particular powers necessary and appropriate to the exercise of such jurisdiction.

Del.]   CUMMINS, *et al.* vs. CUMMINS, *et al.*   441

Opinion of Grubb, J.

The selection of the Superior Court, which has both law and equity powers within the scope of the jurisdiction conferred upon it and also its own juries, as the Court of Appeal from the Register's Court, instead of the Court of Errors and Appeals or the Court of Chancery, forcibly indicates a constitutional intent that these should be appropriately employed in the appellate proceedings. This inference is greatly strengthened by the fact that, whilst the Constitution confers on said Appellate Court exclusive jurisdiction and plenary powers in the premises, it nowhere prescribes the mode of their exercise or any regulation or limitation thereof. Nor does any statute.

All these significant circumstances seem to warrant the view that, on appeal from the definitive decree of the Register's Court, the Superior Court is, by the intent and operation of the Constitution, an Appellate Court of peculiar jurisdiction and exceptional character in our judicial system, established for a peculiar purpose, and not strictly similar to courts of general and purely appellate jurisdiction or subject to their usual course of procedure and practice. Therefore, in the absence of constitutional or statutory regulations or limitations, it may on appeal exercise its jurisdiction and powers in such a manner and subject to such rules of procedure adopted by it as shall be appropriate and essential thereto.

That it has the power on appeal from the final decree of the Register's Court allowing or disallowing the probate of a will of realty or personalty to frame and try by a jury at bar an issue of *devisavit vel non* seems to be in accord with the constitutional meaning and purpose and well established by the adjudications in this State.

In the case of *Barker vs. Spicer*, 4 Harring 347, decided in 1846, this power was affirmed. It is true that the first impression of the Court was to the contrary, but, upon reargument and reconsideration, the Court declared that it was " inclined to affirm its power to order an issue of *devisavit vel non* to be tried by a jury at bar." This is the first case in which the question had been formally raised

and adjudicated in this State.  It was heard before Booth, C. J., and Harrington and Milligan, JJ.

The next case involving this question was *Hall vs. Dougherty*, 5 Houston 435.  It was heard in 1878 before Comegys, C. J., and Wootten and Houston, JJ.  In this case, although the motion for the issue was strenuously opposed, the Court directed the issue to be tried at bar.  Judge Houston in his published report of this case says:

"The Court after consideration of the question, concluded that as the appeal was a novel and peculiar one, although on a good and sufficient ground, that is to say, to the decision specially of the Register refusing to order and award, in the case, an issue of *devisavit vel non*, to be tried before a jury, at the bar of this Court, on the application of the appellants in the Register's Court, the sole object of the appeal would be defeated, and the remedy and redress sought by it rendered wholly nugatory and void, unless an issue of *devisavit vel non* should be ordered by this Court to be framed and tried before a jury at the bar of it on the trial of the appeal in this Court, and accordingly such an order was made by the Court."

The next and last case (until the present appeal) raising the same question was *Etheridge vs. Bennett*, 9 Houst. 295.  In the published report of this case nothing is said in reference to the proceedings on the appeal.  Said report merely shows the trial of the cause on the issue sent up by the Register.  The court record discloses, however, that on the appeal the Court remanded the proceedings to the Register directing him to send up an issue for trial by a jury at its bar, which direction he complied with.  Upon inquiry of the counsel on both sides in said appeal, they concurred in stating that the Court uttered nothing in denial of the power of the appellate court to order an issue for trial at its bar, or of the legality or propriety of the course pursued in the *Hall vs. Dougherty* appeal.

In the latter the full Court sat, whilst in the appeal of *Etheridge vs. Bennett* only two of them sat, Comegys, C. J., and Houston, J.  So that whilst the latter case is an instance of the ordering the

Del.]        CUMMINS, *et al.* vs. CUMMINS, *et al.*        443

Opinion of Grubb, J.

Register to send up an issue, it cannot truly be considered as over-ruling *Hall vs. Dougherty.* As it stands it may be claimed that it indicates that these two judges who sat in both cases, considered that either course might be pursued.

But the Bennett ruling is clearly at variance with *Hall vs. Dougherty,* and also with the final opinion of the Court, upon reconsideration of the question, in *Barker vs. Spicer,* and therefore cannot be deemed as authoritative in this State or binding upon this Court. It is also inconsistent with the opinion now held by this Court in the case before us, that the refusing or granting of an issue is a discretionary power of the Register, even upon the demand of the heir at law.

For if it be true that the granting or refusing an issue is discretionary with the Register, it necessarily follows that, in the exercise of this discretion, he may lawfully refuse such issue. This being so it would seem clear that this Court on appeal cannot reverse, on the ground of such refusal, either his decree allowing or disallowing the probate of a will, or his decision refusing such issue.

Without the reversal of either decree this Court manifestly could not lawfully either order or require him to grant or refuse any issue. Until such reversal the case is in the Appellate Court, wholly removed from the Register's jurisdiction, and he is powerless to frame or award such an issue, or, if he did so, to affirm any verdict thereon, or render any other decision whilst his first decision is still pending above.

It was for this reason that in *Hall vs. Dougherty* this Court asserted its power to frame and try an issue when, in its discretion, it appeared essential to the proper and just determination of the cause before it on appeal.

At the argument the counsel for the respondents conceded that this Court could exercise such power in its discretion, but denied that the heir-at-law was absolutely entitled as of right to have the issue ordered and tried at the bar of the Court on demand as contended by the appellants.

The error underlying this latter and principal contention of the appellants is in assuming that the right to a jury as incident to either the common law action of ejectment or the English chancery procedure for establishing a will of realty still exists in Delaware, unaffected by our constitutional changes and the modifications of our polity and policy. Our constitution has created a special judicial system for the probate of wills, composed of the Register's Court and the Superior Court on appeal, with exclusive and conclusive jurisdiction over that subject, whose procedure has excluded and superseded both of the said common law and chancery modes of procedure. Here the Register's Court has been virtually substituted for the English Ecclesiastical Probate Court, with the latter's jurisdiction enlarged to include wills of realty as well as of personalty. The procedure of the Register's Court is according to the course of the civil and not of the common law, hence on appeal to the Superior Court the nature of the probate proceeding in the the Register's Court still adheres to it in the said Appellate Court, which has both law and equity jurisdiction and procedure. For the Superior Court has express and ample authority to administer justice according to equity as well as law in its exercise of the jurisdiction and powers conferred upon it.

In this country it has been held by the higher Courts, both Federal and State, that there is no constitutional or general right to jury trial in cases clearly within equity jurisdiction. In support of this proposition numerous cases may be cited.

It is the general rule of equity procedure that the ordering of an issue for jury trial is discretionary with the Court. To this general rule an exception was made in England in favor of the heir-at-law in cases of proceedings in equity for the establishment of a will of realty. Nearly two centuries ago this exception was declared and established in Great Britain by the House of Lords, but it must be remembered that this high appellate tribunal was a co-ordinate branch of the British Government, and was composed of titled classes largely supported by great landed estates. From such a polity naturally emanated a policy which discountenanced

Del.]  CUMMINS, *et al.* ·vs. CUMMINS, *et al.*  445·

Opinion of Grubb, J.

the alienation of realty by will and jealously guarded and favored. its uninterrupted descent to the heir.

But our governmental polity, even during our colonial period and certainly since the birth of our statehood in 1776, has been differently constituted under altered conditions, creating dissimilar needs and demanding new or modified policies. So that the reason for the English rule in equity in favor of the absolute right of the heir-at-law, on demand, to have an issue of *devisavit vel non*, before he shall be disinherited by will, having become inapplicable here, it cannot reasonably be held to be adopted or in force within this State, and to have changed in his behalf the general equitable rule that the right to a jury trial is subject to the discretion of the equity judge.

It is true that in many respects the common law rules of descent have been adopted, and particular favor shown to realty and the rights of the heir-at-law, in Delaware. It is also true that the rule of primogeniture has been observed here upon the death of the trustee of realty, and that, from our earliest colonial period until the adoption of our Constitution of 1792, the eldest son was, by statute entitled to a double share of intestate realty. But it is significant that in January, 1794, immediately after the establishment of said Constitution, this provision of said statute was repealed by an act expressly declaring that equality is our policy and that such discriminination is inconsistent therewith.

Therefore it is reasonable to conclude, until the contrary is· shown by the production of some constitutional or statutory provision, or some authoritative adjudication or practice, that the Superior Court on appeal from the Register's Court is not bound by the rigid English rule, as claimed by the appellants, but may or may not direct an issue in its discretion and according as, in its· judgment, the necessities of the particular case and the attainment of justice may require.

At the argument it was not shown, nor has this Court since discovered, that any such constitutional or statutory provision, or any such adjudication or practice in favor of said alleged absolute·

right of the heir-at-law, has ever existed or been operative at any time during our State or colonial history.

Under the Duke of York's government of our three counties, wills of realty as well as of personalty were proved in open court by the attesting witnesses; but no instance has been shown of the trial by jury of any mandatory issue of *devisavit vel non*, during that period, or of any absolute right of the heir-at-law to have the same on demand. Under Penn's government, Registers for the probate of wills were introduced,—and within the Delaware Counties, as early as 1864,—who, as our will records show, probated wills of realty as well as of personalty. Their mode of probate seems to have immediately superseded that theretofore in vogue in open court, and also to have been conclusive, for, so far as yet shown, or discovered in our records, there does not appear, prior to the adoption of the Constitution of 1792, to have been any instance in which the validity of a will of realty, after probate by the Register, was allowed to be collaterally impeached in any other court; whilst since the establishment of the present Register's Court under said Constitution, our Courts have repeatedly and uniformly held that its decisions allowing or disallowing the probate of wills are conclusive, if unappealed from. Indeed, our records, so far as yet discovered or disclosed, do not show any instance, either prior or subsequent to the creation of the Register's Court in 1792, of the adoption of the common law or of the chancery mode of proving or establishing a will of realty, and consequently of the recognition thereby in Delaware of either of said modes of probate, or of the alleged absolute right of the heir-at-law to a jury trial.

Nor does it appear from any constitutional or statutory provision, adjudication or record, or otherwise, that any such absolute right has ever been granted or recognized here on appeal from the Register or the Register's Court. In 1766 a statute provided for a Court of Delegates for each county, to be a Court of Appeal from the Register; but it neither provided it with a jury of its own nor authorized it to order an issue for trial by the jury of any other court. This provision for the said Court of Appeal was abrogated

by the Constitution of 1792 which first created the present probate system of a Register's Court, with an appeal to the old Supreme (now the Superior) Court.

Although it became a practice of the Register's Court, from its origin in 1792 until 1829, to frame and order an issue for trial by a jury of the Supreme, or the old Common Pleas Court, yet there was no express authority, either constitutional or statutory, for the Register's Court to order, or the said courts to entertain, or for the heir, or other party in interest, to have, either as of right or of favor, any such issue or trial by jury. Nor in the absence of satisfactory evidence, as already shown, of some prior authoritative adjudication or practice in that behalf, can any implied authority reasonably be presumed.

It must be presumed, therefore, that this practice began and continued with the mutual consent of all the participants—of the Register, the parties and the Court—because it was recognized as a convenient, direct and effectual mode of determing a controversy respecting a will, and thereby avoiding, in most cases, the delay and expense of an appeal. So that, in its inception, doubtless the awarding of the issue for trial by jury was not mandatory upon the Register, as of absolute right in the heir or other contestant, but wholly discretionary with him. In that light, the act of 1829 seems to have regarded it.

In recognition of its manifest convenience and utility the Legislature accordingly sanctioned the practice and authorized its continuance. Instead of providing in imperative language that the Register "shall" order the issue, it provides that he "shall have the power" to do so. It simply gives to him the authority, which theretofore he had not possessed, to order and require the court and jury to try such issue. If the Legislature had intended to make his exercise of the power conferred mandatory it must be presumed that it would have used language which naturally and unequivocally expressed that design. Under the circumstances this legislative intent cannot be held to be implied. The Legislature found the Register engaged in a practice which was a matter

of favor, not of duty, of discretion, not of compulsion, in making an order for a trial by jury which he had no judicial power either to grant or to enforce. So that the act of 1829 simply gave him the power which he needed and left him the discretion which he already had.

Therefore on appeal from the decision of the Register's Court, this Court will not reverse his decision allowing or disallowing the probate of the will, on the ground that he has either granted or refused an issue, when prayed for by the heir or other party in interest. The dissatisfied litigant still has his resort to this court on appeal from the final decree of the Register's Court, granting or refusing the probate of the will, where he may have the cause retried and his rights finally determined.

The fact that the appeal is from the Register's Court, which has no jury, to this court, which has one as a part of its common law, original jurisdiction and procedure, does not necessarily imply that, by the selection of it as such Appellate Court, the framers of the Constitution designed that the English rule of the absolute right to a jury trial was to be recognized and allowed *ex debito justitiæ*. The probate procedure throughout, both before the Register and this Court, being of an equitable or civil law nature, this Court has been preferred doubtless to the Court of Chancery as the Appellate Court, because the issue could be tried when deemed proper in one and the same court and so save circuity, delay and expense.

This reason in connection with the difference between the English polity and policy and our own, heretofore referred to, manifestly negatives any such implication in favor of the alleged right of the heir-at-law in this Court on appeal. Upon careful consideration of the entire subject, the correct conclusion therefore seems to be that this Court, on appeal from the Register's Court, has the power in its discretion to retry the case either with or without the aid of a jury, and that the appellants in this case as heirs-at-law or otherwise are not entitled as of right to have the issue framed and tried before a jury of this Court as moved by

Del.] CUMMINS, *et al.* vs. CUMMINS, *et al.* 449

Opinion of Grubb, J.

them. Nor does the testimony or any matter urged in this cause disclose any need of the Court for the aid of a jury in determining whether it will reverse or affirm the decree of the Register's Court in the present instance.

This Court has no difficulty in reaching a satisfactory conclusion in this case, without the trial of the issue sought by the appellants, and the needless and therefore unjustifiable delay and expense thereof.

Whilst there is a conflict of testimony, it is nevertheless true that the decisive preponderance of evidence clearly and satisfactorily proves that George W. Cummins, at the time he executed his alleged last will and testament, and the alleged codicil thereto, was of sound and disposing mind and memory and not the subject of undue influence. Therefore the decree of the Register's Court, admitting said will and codicil to probate, should be affirmed by this Court.

CULLEN, J., concurred, but delivered no opinion.